IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DANIEL PILGRIM, et al. | ) | CASE NO. 5:09-cv-00879 |
| | ) | |
| Plaintiffs, | ) | JUDGE HON. JOHN R. ADAMS |
| | ) | |
| vs. | ) | |
| | ) | |
| UNIVERSAL HEALTH CARD, LLC, | ) | |
| et al. | ) | |
| | ) | |
| Defendants. | ) | |

_____

**MEMORANDUM IN SUPPORT OF**

**DEFENDANT UNIVERSAL HEALTH CARD, LLC'S
MOTION TO STRIKE CLASS ALLEGATIONS
PURSUANT TO FED. R. CIV. P. 23(d)(1)(D)**

_____

DATED:     June 29, 2009     LEE E. PLAKAS (0008628)
GARY A. CORROTO (0055270)
EDMOND J. MACK (0082906)
JOHN D. RAMSEY (0083705)
TZANGAS, PLAKAS, MANNOS & RAIES, LTD.
220 Market Avenue South
Eighth Floor
Canton, Ohio 44702
Telephone:     (330) 455-6112
Fax:     (330) 455-2108
Email:     lplakas@lawlion.com

*Attorneys for Defendant Universal
Health Card, LLC*

# **TABLE OF CONTENTS**

**PAGE**

TABLE OF AUTHORITIES . . . . . . . . iv

STATEMENT OF THE ISSUES . . . . . . . 1

SUMMARY OF ARGUMENT . . . . . . . 1

FACTUAL BACKGROUND . . . . . . . . 3

   A.  The UHC Discount Medical Plan Helps Uninsured Consumers Avoid Paying
      "Sticker Price" For Medical Services. . . . . . 4

   B.  The UHC Discount Program Consists of Very Different "Gold" and "Silver"
      Memberships. . . . . . . . . 4

   C.  UHC Discount Medical Plans are Marketed In Varying Mediums with Varying
      Content and Offer Consumers Different Terms of Sale. . . . 5

   D.  Though Marketing Mediums Varied, All Registration Fees Were Clearly
      Disclosed, and Consumers Were Conspicuously and Repeatedly Advised that
      UHC Membership is not Health Insurance. . . . . 6

   E.  The UHC Discount Program Provider Network was Created by Defendant
      Coverdell and Third-Party Health Care One, LLC – Not Defendant Universal. 7

   F.  Just as Many New Products Experience Initial Difficulties, the UHC Discount
      Medical Program Experienced Difficulties with Provider Recognition. . 8

   G.  Thousands of Satisfied Customers Remain Enrolled in the UHC Discount
      Medical Program. . . . . . . . 9

   H.  To Ensure Maximum Customer Satisfaction, Defendant Universal has
      Issued Over 1,000 Refunds to its Customers, Including Refunds of
      Registration Fees. . . . . . . . 9

   I.  The Named Plaintiffs' Alleged Experiences Vary Significantly from
      Each Other and the Experiences of Thousands of UHC Discount
      Program Members. . . . . . . . 10

   J.  Defendant Universal is Taking Active Steps to Strengthen the
      Current UHC Network. . . . . . . 11

   K.  The UHC Discount Medical Program is an Improper Target for Plaintiffs'
      New York Class Action Law Firm. . . . . . 11

**TABLE OF CONTENTS**
(CONTINUED)

**PAGE**

ARGUMENT . . . . . . . . . 12

I. The Putative Class Alleged By Plaintiffs Is Inherently Uncertifiable,
Therefore The Class Allegations Should Be Stricken From The Complaint
Pursuant To Fed. R. Civ. P. 23(D)(1)(D). . . . . . 12

A. Plaintiffs' Proposed Class is Fatally Over-Inclusive and Unascertainable. . 13

B. Individual Questions of Fact and Law Dominate Plaintiffs' Class
Claims for Money Damages, Making a Class Action
Inferior and Unmanageable. . . . . . . 15

1. Individual Questions of Law Dominate Plaintiffs' Putative Class Action. 16

i. The Allegations In Plaintiffs' Complaint Are Governed By The Law
Of Each Individual State Where The UHC Membership
Plans Were Sold. . . . . . . . 17

ii. Variations Between the Consumer Statutes of Each Jurisdiction
Precludes a Finding That Common Questions of Law Predominate. 19

iii. Variations In the Common Law of Unjust Enrichment of Each
Jurisdiction Renders Certification Impossible. . . . 22

iv. Individual issues of law dominate Plaintiffs' putative class claims. 23

2. Individual Questions of Fact Dominate All of Plaintiffs'
Putative Class Claims. . . . . . . . 23

i. The Elements Required To Prove Violations of the Consumer
Protection Statutes Will Necessitate Individualized Inquiries. . 24

ii. Plaintiffs' Unjust Enrichment Claims Will Require
Individual Factual Inquiries. . . . . . 28

C. The Predominance of Individual Questions of Fact and Law, In Addition
to Defendant Universal's Voluntary Efforts to Maximize
Customer Satisfaction, Renders Plaintiffs' Proposed Class Action
Unmanageable and Inferior. . . . . . . 29

II. Plaintiffs' Remaining Individual Claims Fail To Satisfy the $75,000.00
Amount In Controversy Requirement of 28 U.S.C. 1332(A), Therefore
Dismissal of the Entire Action is Appropriate. . . . . 30

CONCLUSION . . . . . . . . . 31

CERTIFICATE OF SERVICE . . . . . . . 32

iii

## <u>TABLE OF AUTHORITIES</u>

**CASES**                                                                                     **PAGE**

*Aguilar v. Allstate Fire and Cas. Ins. Co.*,
E.D.La. No. 06-cv-4660, 2007 WL 734809 (Mar. 6, 2007)   .        .        .        .        12n

*Ashcroft v. Iqbal,*
129 S.Ct. 1937 (2009)        .        .        .        .        .        .        .        .        2n

*Aurigemma v. Arco Petroleum Prods. Co.*,
734 F. Supp. 1025 (D. Conn. 1990)   .        .        .        .        .        .        .        20

*BMW of North Am., Inc. v. Gore*,
517 U.S. 559 (1996) .        .        .        .        .        .        .        .        .        19

*Bennett v. Nucor Corp.,*
E.D.Ark. No. 3:04cv291, 2005 WL 1773948 (July 6, 2005) .        .        .        .        12n

*Bd. of Educ. of Twp. High Sch. v. Climatemp, Inc.*,
N.D.Ill. Nos. 79 C 3144 & 79 C 4898, 1981 WL 2033 (Feb. 20, 1981)        .        .        12n

*Block v. Abbott Laboratories.*
N.D.Ill. No. 99 C 7457, 2002 WL 485364 (Mar. 29, 2002)   .        .        .        .        21n

*Blue Cross, Inc. v. Corcoran*,
558 N.Y.S.2d 404 (App. Div. 1990)   .        .        .        .        .        .        .        20

*Bond Leather Co. v. Q.T. Shoe Mfg. Co.*,
764 F.2d 928 (1st Cir. 1985) .        .        .        .        .        .        .        .        20

*Brenner Marine, Inc. v. George Goudreau, Jr. Trust*,
6th Dist. No. No. L-93-077, 1995 WL 12118 (Jan. 13, 1995)        .        .        .        21

*Carpenter v. BMW of North America, Inc.*,
E.D.Pa. No. CIV. A. 99-CV-214,1999 WL 415390 (E.D. Pa. 1999) .        .        .        21n

*Chaz Concrete Co. v.Codell,*
E.D.Ky. No. 3:03-52-KKC, 2006 WL 2453302 (Aug. 23, 2006)        .        .        .        14n

*Chesner v. Stewart Title Guar. Co.*,
N.D.Ohio No. 1:06-cv-00476, 2008 WL 553773 (Jan. 23, 2008)        .        .        .        16, 29n

*Clark v. Experian Info. Solutions, Inc.*,
256 Fed. Appx. 818 (7th Cir. 2007) .        .        .        .        .        .        .        26n, 27

*Clay v. Am. Tobacco Co.*,
188 F.R.D. 483, 490 (S.D. Ill. 1999) .        .        .        .        .        .        .        13, 22

### TABLE OF AUTHORITIES
(CONTINUED)

**CASES**                                                                                      **PAGE**

*Colonial Lincoln-Mercury Sales, Inc. v. Molina*,
262 S.E.2d 820 (Ga. App. 1979) . . . . . . . .  20

*Cook County College Teachers Union, Local 1600, Am. Federation of Teachers,
AFL-CIO v. Byrd*,
456 F.2d 882 (7th Cir. 1972) . . . . . . . . .  12, 12n

*Cooper v. GGGR Investments, LLC*,
334 B.R. 179 (E.D.Va. 2005) . . . . . . . .  20

*Coors v. Sec. Life of Denver Ins. Co.*,
112 P.3d 59 (Colo. 2005) . . . . . . . .  19

*Debra F. Fink, D.M.D., MS, PC v. Ricoh Corp.*,
365 N.J.Super. 520, 839 A.2d 942 (2003) . . . . . .  18n

*Delhomme Industries, Inc. v. Houston Beechcraft, Inc.*,
669 F.2d 1049 (5th Cir. 1982) . . . . . . .  20

*Demitropoulous v. Bank One Milwaukee, N.A.*,
915 F. Supp. 1399 (N.D. Ill. 1996) . . . . . .  19

*Dennis v. Whirlpool Corp.*,
S.D.Fla. No. 9:06-cv-80784-KLR (Mar. 12, 2007) . . . .  4n

*Dix v. Am. Bank Life Assurance Co.*,
415 N.W.2d 206 (Mich. 1987) . . . . . . .  20

*Drooger v. Carlisle Tire & Wheel Co.*,
W.D. Mich. No. 1:05-CV-73, 2006 WL 1008719 (Apr. 18, 2006) . . .  23n

*Faralli v. Hair Today, Gone Tomorrow*,
N.D.Ohio No.1:06-cv-504, 2007 WL 120664 (Jan. 10, 2007) . . .  14, 15, 27

*Feeney v. Disston Manor Personal Care Home, Inc.*,
849 A.2d 590 (Pa.Super.2004) . . . . . . .  20

*Fisher v. Bristol-Myers Squibb Co.*,
181 F.R.D. 365 (N.D. Ill. 1998) . . . . . . .  21n

*Forbes v. Par Ten Group, Inc.*,
394 S.E.2d 643 (N.C. App. 1990) . . . . . . .  20

*General Telephone Co. of Southwest v. Falcon*,
457 U.S. 147, 102 S.Ct. 2364 (1982) . . . . . . .  12

# TABLE OF AUTHORITIES
### (CONTINUED)

**CASES**                                                                              **PAGE**

*Gonzalez v. Proctor and Gamble Co.*,
247 F.R.D. 616 (S.D.Cal. 2007)     .     .     .     .     .     .     .     26

*Gorsey v. I.M. Simon, & Co*,
121 F.R.D. 135 (D.Mass.1988)     .     .     .     .     .     .     .     19n

*Green v. McNeil Nutritionals, LLC*,
No. 2004-0379-CA, 2005 WL 3388158 (Fla. Cir. Ct. Nov. 16, 2005)     .     .     29n

*Gross v. Johnson & Johnson-Merck Consumer Pharms. Co.*,
696 A.2d 793 (N.J. Super. Ct. 1997) .     .     .     .     .     .     .     27n

*Guity v. Commerce Ins. Co.*,
36 Mass.App.Ct. 339, 631 N.E.2d 75 (1994) .     .     .     .     .     .     21

*Haskell v. Time, Inc.*,
857 F. Supp. 1392 (E.D. Cal. 1994) .     .     .     .     .     .     .     20

*Hazlehurst v. Brita Prod. Co.*,
295 A.D.2d 240 (N.Y. App. Div. 2002)     .     .     .     .     .     .     25

*Hoang v. E*Trade Group, Inc.*,
151 Ohio App.3d 363, 2003-Ohio-301, 784 N.E.2d 151     .     .     .     .     14n

*In re Aiello*,
231 B.R. 693 (N.D. Ill. 1999)     .     .     .     .     .     .     .     15

*In re Am. Med. Sys., Inc.*,
75 F.3d 1069 (6th Cir. 1996) .     .     .     .     .     .     .     .     13, 23n, 29

*In re Baycol Products Litigation*,
218 F.R.D. 197 (D.Minn. 2003)     .     .     .     .     .     .     .     22. 29n

*In re Bridgestone/Firestone, Inc.*,
288 F.3d 1012 (7th Cir. 2002)     .     .     .     .     .     .     .     16, 18, 21n, 22n

*In re Conagra Peanut Butter Products Liability*,
251 F.R.D. 689 (N.D.Ga.2008)     .     .     .     .     .     .     .     22n

*In re Ford Motor Co. Bronco II Prod. Liab. Litig.*,
177 F.R.D. 360 (E.D.La.1997)     .     .     .     .     .     .     .     18n

*In re Ford Motor Co. Ignition Switch Prods. Liab. Litig.*,
174 F.R.D. 332 (D.N.J. 1997)     .     .     .     .     .     .     .     18

## TABLE OF AUTHORITIES
(CONTINUED)

**CASES**                                                                                           **PAGE**

*In re General Motors Corp. Anti-Lock Brake Prods. Liab. Litig.*,
966 F. Supp.1525 (E.D. Mo. 1997)      .          .          .          .          .          .          22n

*In re HP Inkjet Printer Litigation*,
N.D.Cal. No. C 05-3580 JF, 2008 WL 2949265 (July 25, 2008)          .          .          .          21

*In re Jackson Nat'l Life Ins. Co. Premium Litig.*,
183 F.R.D. 217 (W.D.Mich.1998)          .          .          .          .          .          18n, 29n

*In re Masonite Corp. Hardboard Siding Products Liability Litigation*,
170 F.R.D. 417 (E.D.La. 1997)          .          .          .          .          .          .          26

*In re McDonald's French Fries Litigation*,
N.D.Ill. No. 06 C 4467, 2009 WL 1286024 (May 6, 2009)          .          .          .          14, 21

*In re Prempro*,
230 F.R.D. 555 (E.D.Ark. 2005)          .          .          .          .          .          .          21n, 22n, 26

*In re Rezulin Products Liability Litigation*,
210 F.R.D. 61 (S.D.N.Y. 2002)          .          .          .          .          .          .          28

*In re Rhone-Poulenc Rorer Inc.*,
51 F.3d 1293 (7th Cir. 1995) .          .          .          .          .          .          .          30n

*In re School Asbestos Litigation*,
789 F.2d 996 (3rd Cir. 1986) .          .          .          .          .          .          .          19n

*In re Sears, Roebuck & Co. Tools Mktg. & Sales Practices Litig.*,
No. 05 C 4742, 05 C 2623, 2007 WL 4287511 (N.D. Ill. Dec. 4, 2007)          .          .          23n, 29n, 30n

*In re Stucco Litig.*,
175 F.R.D. 210 (E.D.N.C. 1997)          .          .          .          .          .          .          12n

*Jones v. Allercare, Inc.*,
203 F.R.D. 290 (N.D.Ohio 2001)          .          .          .          .          .          .          26n, 30, 30n

*Karnuth v. Rodale, Inc.*,
E.D.Pa. No. Civ.A. 03-742, 2005 WL 1683605 (July 18, 2005)          .          .          .          18n, 21n

*Klaxon Co. v. Stentor Elec. Mfg. Co.*,
313 U.S. 487 61 S.Ct. 1020 (1941)          .          .          .          .          .          .          17

*Krieger v. Gast*,
197 F.R.D. 310 (W.D.Mich. 2000)          .          .          .          .          .          .          29n

## TABLE OF AUTHORITIES
(CONTINUED)

**CASES**                                                                                    **PAGE**

*Kubany v. Sch. Bd.*,
149 F.R.D. 664 (M.D. Fla. 1993)     .     .     .     .     .     .     .     15

*Lewis v. Bayer AG*,
2004 WL 1146692 (Pa.Com.Pl. Nov.18, 2004)     .     .     .     .     .     18n

*Lilly v. Shaughnessy*,
N.D.Ill. No. 00 C 7372, 2002 WL 507126 (April 3, 2002)     .     .     .     .     22n

*Linn v. Roto-Rooter, Inc.,*
8th Dist. No. 82657, 2004-Ohio-2559     .     .     .     .     .     .     18n, 28, 29n

*Lumpkin v. E.I. DuPont de Nemours & Co.*,
161 F.R.D. 480 (M.D. Ga. 1995)     .     .     .     .     .     .     12n

*Lynas v. Williams*,
454 S.E.2d 570 (Ga.App.1995)     .     .     .     .     .     .     .     20

*Lyon v. Caterpillar, Inc.,*
194 F.R.D. 206 (E.D.Pa.2000)     .     .     .     .     .     .     .     18n, 22n, 30n

*Martin v. Am. Med. Sys., Inc.*,
S.D. Ind. No. IP 94-2067-C-H/G, 1995 WL 680630 (Oct. 25, 1995) .     .     .     14n

*Martin v. Dahlberg, Inc.,*
156 F.R.D. 207 (N.D. Cal. 1994)     .     .     .     .     .     .     .     27

*Mass. Laborers' Health & Welfare Fund v. Philip Morris, Inc.,*
62 F. Supp. 2d 236 (D. Mass. 1999) .     .     .     .     .     .     .     20

*McElhaney v. Eli Lilly & Co.*,
93 F.R.D. 875 (D.S.D. 1982).     .     .     .     .     .     .     .     13

*McGee v. East Ohio Gas Company,*
200 F.R.D. 382 (S.D Ohio 2001)     .     .     .     .     .     .     .     14n

*McLaughlin v. Am. Tobacco Co.*,
522 F.3d 215 (2nd Cir. 2008)     .     .     .     .     .     .     .     26n

*Miller v. Motorola, Inc.,*
76 F.R.D. 516 (N.D. Ill. 1977)     .     .     .     .     .     .     .     15

*Miller v. University of Cincinnati,*
241 F.R.D. 285 (S.D.Ohio 2006)     .     .     .     .     .     .     .     13, 14n

# TABLE OF AUTHORITIES
### (CONTINUED)

**CASES**                                                                   **PAGE**

*Morgan v. Biro Mfg. Co.*,
15 Ohio St.3d 339, 474 N.E.2d 286 (1984)    .    .    .    .    .    .    17

*Nguyen v. St. Paul Travelers Ins. Co.*,
E.D.La. No. 06-4130, 2009 WL 23677 (Jan. 5, 2009)    .    .    .    .    12n

*Occidental Land Inc. v. Superior Court (Fahnestock)*,
556 P.2d 750 (Cal. 1976)    .    .    .    .    .    .    .    20

*Ohio ex rel. Celebrezze v. Ferraro*,
63 Ohio App.3d 168, 578 N.E.2d 492 (1989)    .    .    .    .    .    20

*Ortho Pharmaceutical Corp. v. Cosprophar, Inc.*,
32 F.3d 690 (2nd Cir. 1994)    .    .    .    .    .    .    .    5n

*Oshana v. Coca-Cola Bottling Co.*,
225 F.R.D. 575 (N.D. Ill. 2005)    .    .    .    .    .    .    .    14n, 26n, 28, 29

*Osuna v. Wal-Mart Stores, Inc.*,
No. C20014319, 2004 WL 3255430 (Ariz. Super. Ct. Dec. 23, 2004)    .    .    29n

*Partipilo v. Hallman*,
156 Ill.App.3d 806, 109 Ill.Dec. 387, 510 N.E.2d 8, 11 (1987)    .    .    .    22

*Pettrey v. Enterprise Title Agency, Inc.*,
241 F.R.D. 268 (N.D.Ohio 2006)    .    .    .    .    .    .    .    15n

*Picus v. Wal-Mart Stores, Inc.*,
D.Nev. Nos. 2:07-CV-00682-PMP-LRL, 2:07-CV-00686-PMP-LRL,
2:07-CV-00689-PMP-LRL, 2009 WL 667419 (Mar. 16, 2009)    .    .    .    20, 27n

*Rancho Publications v. Superior Court*,
68 Cal.App.4th 1538, 81 Cal.Rptr.2d 274 (Cal.App. 4 Dist. 1999)    .    .    5n

*Repede v. Nunes*,
8th Dist. Nos. 87277, 87469, 2006-Ohio-4117    .    .    .    .    .    14n

*Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.*,
62 P.3d 142 (Colo. 2003)    .    .    .    .    .    .    .    20

*Richard/Allen/Winter, Ltd. v. Waldorf*,
509 N.E.2d 1078 (Ill. App. 1987)    .    .    .    .    .    .    .    21

*Robinson v. McDougal*,
62 Ohio App. 3d 253, 575 N.E.2d 469 (1988)    .    .    .    .    .    21

# TABLE OF AUTHORITIES
## (CONTINUED)

| CASES | PAGE |
|---|---|
| *Rodney v. Northwest Airlines, Inc.*, 146 Fed. Appx. 783 (6th Cir. 2005) | 16 |
| *Romberio v. Unumprovident Corp.* (Jan. 12, 2009), 6th Cir. No.  07-6404, 2009 WL 87510 | 13 |
| *Rosenstein v. CPC Intern., Inc.*, E.D.Pa. No. 90-4970, 1991 WL 1783 (Jan. 8, 1991) | 27, 27n |
| *Simer v. Rios*, 661 F.2d 655 (7th Cir. 1981) | 14n, 26 |
| *So. States Police Benevolent Ass'n, Inc. v. First Choice Armor & Equip., Inc.*, 241 F.R.D. 85 (D. Mass. 2007) | 21n |
| *Sokolski v. Trans Union Corp.*, 53 F. Supp. 2d 307 (E.D.N.Y. 1999) | 20 |
| *Solomon v. Bell Atlantic Corp.*, 9 A.D.3d 49 (N.Y. App. Div. 2004) | 27 |
| *Southtown Plumbing, Inc. v. Har-Ned Lumber Co.*, 493 N.W.2d 137 (Minn.Ct.App.1992) | 22 |
| *Spence v. Glock, Ges.m.b.H.*, 227 F.3d 308 (5th Cir. 2000) | 19 |
| *Stephenson v. Capano Development, Inc.*, 462 A.2d 1069 (Del. 1983) | 21 |
| *Stipelcovich v. Direct TV, Inc.*, 129 F.Supp. 2d 989 (E.D. Tex. 2001) | 21n |
| *St. Clair v. Kroger Co.*, 581 F.Supp.2d 896 (N.D.Ohio 2008) | 30 |
| *Strain v. Nutri/System, Inc.*, E.D.Pa. No. 90-2772, 1990 WL 209325 (Dec. 12, 1990) | 27n |
| *Tele-Save Merch. Co. v. Consumers Distrib. Co.*, 814 F.2d 1120 (6th Cir.1987) | 17 |
| *Thompson v. Bayer Corp.*, E.D.Ark.No. 4:07CV00017 JMM, 2009 WL 362982 (Feb. 12, 2009) | 22n |

### <u>TABLE OF AUTHORITIES</u>
(CONTINUED)

**CASES**         **PAGE**

*Thornton v. State Farm Mut. Auto Ins. Co.*,
N.D.Ohio No. 1:06-cv-00018, 2006 WL 3359482 (Nov. 17, 2006) . . . 12n, 13

*Trade 'N Post, L.L.C. v. World Duty Free Americas, Inc.*,
628 N.W.2d 707 (N.D. 2001) . . . . . . . 19

*Tylka v. Gerber Products Co.*,
178 F.R.D. 493 (N.D. Ill. 1998) . . . . . . . 21n

*Walsh v. Ford Motor Co.*,
807 F.2d 1000 (D.C. Cir. 1986) . . . . . . . 19n

*Williams v. Ford Motor Co*,
192 F.R.D. 580 (N.D. Ill. 2000) . . . . . . . 26n

**STATUTES, REGULATIONS, AND RULES**

6 Del. Code § 2525 . . . . . . . . . 21

16 C.F.R. 251.l(a)(2) . . . . . . . . . 3

28 U.S.C. § 1332 . . . . . . . . . 30

Ala. Code § 8-19-10(a) . . . . . . . . 21

Ala. Code § 8-19-10(e) . . . . . . . . 19

Ala. Code § 8-19-10(f) . . . . . . . . 19

Ark. Code Ann. 4-11-107(a) . . . . . . . . 20

Cal. Civ. Code § 1782 . . . . . . . . 19

Conn. Gen. Stat. § 42-110g(c) . . . . . . . 19

Del § 2513 . . . . . . . . . . 20

Fed. R. Civ. P. 23 . . . . . . . . . *passim*

Fla. Stat. 501.203(7) . . . . . . . . 20

Ga. Code Ann. § 10-1-399 . . . . . . . . 19

Haw. Rev. Stat. § 480-2(d) . . . . . . . . 20

## TABLE OF AUTHORITIES
(CONTINUED)

**STATUTES, REGULATIONS, AND RULES**                                   **PAGE**

Idaho Code § 48-601 .          .        .        .        .        .        .        .        .        20

Idaho Code § 48-603 .          .        .        .        .        .        .        .        .        20

Iowa Code Ann. § 714.16(7) .        .        .        .        .        .        .        .        19

Kan. Stat. Ann. § 50-626(b)(1)        .        .        .        .        .        .        .        20

Kan. Stat. Ann. § 50-634(g)  .        .        .        .        .        .        .        .        19

La. Rev. Stat. Ann. § 51:1409        .        .        .        .        .        .        .        19, 20

Mass. Gen. Laws. ch. 93A, § 9(3)        .        .        .        .        .        .        .        19

Miss. Code Ann. § 75-24-15 .        .        .        .        .        .        .        .        19, 20

Mo. Rev. Stat. § 407.025.1  .        .        .        .        .        .        .        .        20

Mo. Rev. Stat. § 407.025.7  .        .        .        .        .        .        .        .        20

Mont. Code Ann. § 30-14-133        .        .        .        .        .        .        .        19

N.D.CC. § 51-15-09        .        .        .        .        .        .        .        .        19

N.H. Stat. § 358-A:10        .        .        .        .        .        .        .        .        21

N.M. Stat. § 57-12-10-E        .        .        .        .        .        .        .        19

Nev. Rev. Stat. Ann. § 598.0915        .        .        .        .        .        .        .        20

O.A.C. §109:4-3-02  .        .        .        .        .        .        .        .        .        3

O.A.C. §109:4-3-04  .        .        .        .        .        .        .        .        .        3

Okla. Stat. Ann. Tit. 15, §§ 753(5)        .        .        .        .        .        .        .        20

Or. Rev. Stat. § 646.638(1)  .        .        .        .        .        .        .        .        20

R.C. § 1345.03        .        .        .        .        .        .        .        .        .        4, 20

R.C. § 1345.09        .        .        .        .        .        .        .        .        .        19, 19n, 21

R.C. § 1345.10        .        .        .        .        .        .        .        .        .        2n

S.C. Code Ann. § 39-5-140(a)        .        .        .        .        .        .        .        19

## **TABLE OF AUTHORITIES**
### (CONTINUED)

**STATUTES, REGULATIONS, AND RULES**                                **PAGE**

Tenn. Code § 47-18-103 . . . . . . . . 20

Tex. Bus. Com. Code § 17.45(4) . . . . . . . 20

Tex. Bus. Com. Code § 17.505 . . . . . . . 19

Wash. Code Ann. § 19.86.090 . . . . . . . 21

**OTHER AUTHORITIES**

David R. Rice, *Product Quality Laws and the Economics of Federalism*
65 B.U.L. REV. 1 (Jan.1985) . . . . . . . 19

John S. Kiernan, Michael Potenza, Peter Johnson (1998),
Developments in Consumer Fraud Class Action Law, 537 PLI/PAT 237, 279 . 21n

Section 6 of 1 Restatement of the Law 2d, Conflict of Laws 10 . . . 17n

## STATEMENT OF THE ISSUES

1. Whether Plaintiffs have satisfied their burden to plead a proposed class susceptible of precise definition when the putative class alleged by Plaintiffs includes thousands of members who have never viewed any purportedly deceptive advertisements, have not experienced any problems with Defendants' products, and who currently enjoy the benefits provided by Defendants' products?

2. Whether Plaintiffs have satisfied their burden to plead sufficient facts which plausibly demonstrate that common issues of law will predominate over individual issues rendering class certification appropriate pursuant to Fed. R. Civ. P. 23(b)(3), when Plaintiffs' claims require application of dozens of separate consumer protection statutes and dozens of jurisdictions' unjust enrichment laws, all with dramatically different legal requirements?

3. Whether Plaintiffs have satisfied their burden to plead sufficient facts which plausibly demonstrate that common issues of fact will predominate over individual issues as required by Fed. R. Civ. P. 23(b)(3) when Plaintiffs' claims require individualized inquiry into the alleged misrepresentation received by each putative class member, whether the class member received subsequent curative representations, whether the class member reasonably relied upon the alleged representation, whether the class member enjoyed the benefits of Defendants' products without difficulty, and whether the class member suffered cognizable harm?

4. Whether Plaintiffs have satisfied their burden to plead sufficient facts which plausibly demonstrate that class action treatment is a superior and manageable vehicle for adjudication as required by Fed. R. Civ. P. 23(b)(3) when common issues of law and fact do not predominate, Defendants have already voluntarily provided over 1,000 refunds to customers who have experienced difficulties with Defendants' products, and Defendants are actively taking steps to offer a substitute, superior product free of charge to each putative class member?

## SUMMARY OF ARGUMENT

Plaintiffs Patrick Kirlin and Daniel Pilgrim ("Plaintiffs") have filed a putative class action complaint ("Complaint") against Defendants Universal Health Card, LLC ("Universal") and Coverdell & Company, Inc. ("Coverdell"), purportedly on behalf of all purchasers of the Universal Health Card

("UHC") discount medical card memberships marketed, sold, and administered by Defendants. (Compl. at ¶19).  Plaintiffs allege that Defendants (a) used the word "free" in advertisements for the UHC discount card membership without disclosing all conditions to the offer; (b) failed to state all exclusions, reservations, and limitations that pertain to UHC membership offers advertised; and (c) unconscionably advertised and sold UHC discount memberships to consumers knowing that the memberships did not provide a substantial benefit to its purchasers.

In addition to their own individual claims, Plaintiffs purportedly filed this Complaint on behalf of one single nationwide class:

> "[A]ll persons in the United States who were charged fees by Defendants, or any one of their subsidiaries, for the card marketed, promoted, maintained and/or administered by Defendants, during the period from January 1, 2006 to the present."[1]

(Compl. at ¶51).  According to Plaintiffs, **all** purchasers of UHC discount medical plan memberships share claims for monetary damages for consumer fraud based upon the Ohio Consumers Sales Practices Act ("OCSPA") and "Equivalent State Causes of Action" (Count One), as well as claims for unjust enrichment (Count Two).  (*Id.* at ¶¶54-62).

The fatal flaw in Plaintiffs' class allegations is that they lack any foundation in Fed. R. Civ. P. 23.  Such patently uncertifiable claims cannot properly provide a basis for allowing Plaintiffs to impose on Defendants and the Court the substantial costs involved in class-certification discovery and proceedings.  The putative class members purchased different UHC discount medical plans, made their purchase decisions for different reasons after receiving different representations (if any), experienced different alleged problems (if any), and received different remedies or refunds (if any).  In fact, thousands of individuals currently enjoy the benefits provided by UHC discount medical plan membership, and therefore have no claim.

Absent allegations supporting a ***plausible*** inference of consumer fraud causing ***class-wide injury***,[2] Plaintiffs have failed to allege a cohesive, identifiable class.  Moreover, Plaintiffs' failure to make a *prima facie* showing that they may be able to satisfy Fed. R. Civ. P. 23(b)(3)'s requirement that

---

[1] As discussed more fully in Defendant Coverdell's Memorandum in Support of Motion to Dismiss (Docket No. 23), pp. 17-19, the statute on which Plaintiffs purport to rely, the OCSPA, has a two year statute of limitations.  R.C. §1345.10(C).

[2] *See generally, Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).

individual questions of both law and fact will ***predominate*** over any individualized issues renders class certification improper.  The Plaintiffs' allegations will require the application of dozens of varying state consumer protection laws, in addition to dramatically differing principles of unjust enrichment.  Further, because of the nature of Plaintiffs' allegations, it will be necessary to litigate on a class member-by-class member basis highly individualized questions of fact relating to what representations were received before purchasing a UHC discount membership, the existence of potentially curing statements, proximate cause, reliance, and actual damage or loss.  Finally, because Defendants have voluntarily issued refunds to over 1,000 customers who did legitimately experience problems with the UHC discount medical plan, and because Defendant Universal is actively taking steps to offer a substitute, superior product to each putative class member free of charge, class adjudication is not a superior mechanism to adjudicate this dispute.

Accordingly, pursuant to Fed. R. Civ. P. 23(c)(1), and 23(d)(1)(D), the Court should strike all class allegations from the Complaint because Plaintiffs have pled no viable theory of class recovery and, as a matter of law, cannot satisfy Fed. R. Civ. P. 23's requirements for class certification.  To do otherwise would allow Plaintiffs to impose on UHC hundreds of thousands of dollars in discovery expenses to defeat, inevitably, Plaintiffs' baseless class claims.

## FACTUAL BACKGROUND

Plaintiffs have sued Defendants Universal and Coverdell purportedly on behalf of all buyers of the UHC.  The UHC is a discount medical health membership program marketed, sold, and administered by Defendants.  (Compl. at ¶19).  Plaintiffs allege that Defendants violated the OCSPA and "similar consumer protection laws of other states" (Count One) because:

(1) The manner in which the word "free" is used in the Defendants' advertisements of the UHC violates O.A.C. §109:4-3-04 and 16 C.F.R. 251.l(a)(2) because the advertisements allegedly do not clearly state the conditions to obtain UHC membership;

(2) The Defendants' advertisements of the UHC allegedly violate O.A.C. §109:4-3-02 because they purportedly do not clearly disclose all of the exclusions, reservations, limitations and conditions associated with UHC membership; and

(3) Defendants' acts are unconscionable in violation of R.C. §1345.03 because they know that consumers will not receive a substantial benefit from UHC membership and make misleading statements in their advertisements.

(*Id.* at ¶¶23-31; 54-62).  Based upon these same allegations, Plaintiffs have also asserted a claim for unjust enrichment (Count Two).  (*Id.* at ¶64).

**A.  The UHC Discount Medical Plan Helps Uninsured Consumers Avoid Paying "Sticker Price" For Medical Services.**

Defendants offer consumers a comprehensive discount medical plan known as the UHC. (Compl. at ¶19.   The plan operates not unlike other discount plans; participating network providers provide UHC members direct discounts on the services rendered.  (*Id.* at Exh. A).  Participating providers include doctors, dentists, chiropractors, pharmacies, and hospitals.  (*Id.* at Exh. A). Defendants do not make any payments to providers on behalf of consumers, and the discounts received from each respective provider vary.  (*Id.* at Exh. A).

The discount plan is administered by Defendant Coverdell, a discount medical plan organization ("DMPO").  (Compl. at ¶¶19-20, Exh. A).  Consumers can register for the discount plan in two ways – either speaking with a trained customer service representative of Defendant Universal, or through Defendant Universal's website, www.universalhealthcard.com.  (*Id.* at ¶19-20).  Upon registration, consumers are advised that they are entering into an agreement with plan administrator Defendant Coverdell.  (*Id.* at ¶20, Exh. A).  No forms are required to be completed, and because the discount medical plan is not health insurance, medical examinations are unnecessary.  (*Id.* at Exh. A).

**B.  The UHC Discount Program Consists of Very Different "Gold" and "Silver" Memberships.**

Defendants offer consumers two very different versions of the UHC discount medical plan.  The first is the "Gold Plan."  (Exh. 1 at ¶3).[3]  With the Gold Plan, Defendants provide discounts when utilizing approximately 561,000 medical providers, including physicians, hospitals, dentists, pharmacies, eye and ear specialists, and chiropractors.  (Exh. 1 at ¶3).  The Gold Plan also includes a live, confidential, 24-hour registered nurse helpline, in addition to membership in the AIG TravelGuard

---

[3] It is appropriate for the Court to consider facts outside the Complaint in support of a motion to strike class allegations pursuant to Fed. R. Civ. P. 23.  *See, e.g., Dennis v. Whirlpool Corp.,* S.D.Fla. No. 9:06-cv-80784-KLR, at 5 n.1 (Mar. 12, 2007) ("Plaintiffs asked the Court to strike Defendant's motion [to strike class allegations] on the grounds that Defendant's exhibits are improper under Rule 12(b)(6). Defendant's exhibits are proper, however, as defendant introduced them in support of its motion to strike class allegations."), attached hereto as **Exhibit 2.**

Assist Emergency Travel Assistance Plan.  (Exh. 1 at ¶3).  In contrast, the Silver Plan provides discounts with significantly less providers.  (Exh. 1 at ¶3).  Silver Plan providers include pharmacies, dentists, eye and ear doctors, and chiropractors.  (Exh. 1 at ¶3).  Excluded from Silver plan discounts are physicians and hospitals, which, as explained below, comprise hundreds of thousands of participants in the discount network administered by Defendant Coverdell.  (Exh. 1 at ¶3).

Due to the increased provider access, Gold Plan memberships are more expensive than Silver Plan memberships.  Regular price for Gold Plan membership is $49.00 per month, in addition to a non-refundable registration fee of $88.00.  (Exh. 1 at ¶4).  Membership in the Silver Plan, on the other hand, is $29.95 per month, in addition to a $58.00 non-refundable registration fee.  (Exh. 1 at ¶4).

**C.  UHC Discount Medical Plans are Marketed In Varying Mediums with Varying Content and Offer Consumers Different Terms of Sale.**

Defendants market the discount medical program in different mediums, each conveying differing messages and offering program membership on different terms.  One medium is a one-page newspaper advertisement "advertorial"[4] published in targeted geographic markets.  (*See,* Compl. at ¶23, Exh. A; Exh. 1 at ¶5, Exhs. A and B).  A copy of one such advertisement is found at Exh. A to the Complaint.  Defendants also heavily marketed program membership with a multi-page, comprehensive internet website located at www.universalhealthcard.com.  (Compl. at ¶20; Exh. 1 at ¶5, Exh. C).  As readily discerned by a cursory review, the detail of the information conveyed by these two mediums varied significantly.  (*Cf.*, Exh. 1 at ¶5, Exh. A with Exh. C).  Moreover, in order to comply with the varying advertising laws and regulations of each jurisdiction, Defendants utilized two different newspaper advertisements depending upon the targeted market.  (*Cf.,* Exh. 1 at ¶5, Exh. A with Exh. B).

The purpose of Defendants' newspaper advertisements was to increase sales and generate interest in the UHC discount program in specific markets by offering a special membership opportunity to consumers.  (Exh. 1 at ¶6).  This offer consisted of a free trial membership in either UHC discount

---

[4] "Advertorials" "are newspaper and magazine advertisements that are formatted in the same style as news articles and are placed adjacent to news items."  *Ortho Pharmaceutical Corp. v. Cosprophar, Inc.*, 32 F.3d 690, 693 (2nd Cir. 1994).  The term "advertorial" has been in usage for over 40 years, and the marketing style is often considered similar to television informercials. *Rancho Publications v. Superior Court*, 68 Cal.App.4th 1538, 1542, 81 Cal.Rptr.2d 274 n. 1 (Cal.App. 4 Dist. 1999).

plan for 30-days, provided the customer paid a reduced, one-time $18.00 non-refundable registration fee.  (Compl. at Exh. A; Exh. 1 at ¶6, Exhs. A and B).  In an effort to control costs and manage staffing in light of the significant consumer response generated by this special offer, Defendants utilized a 48-hour deadline to encourage prompt customer response.  (Exh. 1 at ¶6).

This special offer was only made through newspaper advertisement.  (Exh. 1 at ¶6).  It was never made available to consumers who purchased a UHC membership through the internet.  (Exh. 1 at ¶6).  In contrast, those customers who purchased through the internet paid the first full month membership fee, in addition to the higher non-refundable registration fee.  (Exh. 1 at ¶6, Exh. C).  If, however, any customer was not satisfied with their internet purchase, the consumer was provided the opportunity to receive a refund of the first month membership fee if membership was cancelled within 30 days.  (Exh. 1 at ¶6, Exh. C).

### D. Though Marketing Mediums Varied, All Registration Fees Were Clearly Disclosed, and Consumers Were Conspicuously and Repeatedly Advised that UHC Membership is not Health Insurance.

Though the messages communicated by each medium varied, Defendants consistently and conspicuously notified consumers of all material terms regarding membership in the UHC discount medical plan.  These terms include:

- **Membership Not Health Insurance.**  Each marketing piece created by Defendants conspicuously advised consumers that the UHC discount medical plans are not health insurance.  (*See*, Compl. at Exh. A; Exh. 1 at ¶5, Exhs. A-C).  To illustrate, the UHC membership card itself, which is displayed prominently in Defendants' advertisements, appears as follows:



(Compl. at Exh. A; Exh. 1 at Exh. 1 at ¶5, Exhs. A-C).

- **Registration Fee Required.**  Each marketing piece created by Defendants conspicuously advised consumers that payment of a registration fee is required to participate in the UHC discount medical program.  For instance, the byline in the newspaper advertisement cited by Plaintiffs reads:



*Public gets free card for 30 days just* <mark>*by beating the deadline to cover only the registration fee*</mark> *for the affordable care provided by over 561,000 Doctors, Dentists, Pharmacists and Hospitals*

(Compl. at Exh. A [emphasis added]).  Similarly, Defendant Universal's website reads:

The Universal Health Card is a comprehensive Discount Medical Plan that provides our members with savings between 5% to 60% on all of their healthcare needs. Our plans start at as little as $29.95 per month. Plans include doctors, hospitals, dentists, vision, hearing, diabetic supplies, prescription drugs and much more. Just pick the plan that best serves your healthcare needs and when you enroll today, you'll get 30 days to use the card and if you're not satisfied you can cancel your membership at anytime within the 30 days and your first month's fee will be refunded, the one time registration fee is non-refundable. Then as soon as you become a member, you'll no longer pay full price for your

(Exh. 1 at ¶5, Exh. C [emphasis added]).  In addition, when placing their order by telephone, each subscriber is specifically informed of the non-refundable registration fee.  (Exh. 1 at ¶7, Exhs. D-E).  As discussed in more detail below, this occurred when both Plaintiffs Kirlin and Pilgrim purchased UHC discount medical program memberships.  (Exh. 1 at ¶7, Exhs. D-E).

**E.  The UHC Discount Program Provider Network was Created by Defendant Coverdell and Third-Party Health Care One, LLC – Not Defendant Universal.**

The UHC provider network was not established by Defendant Universal, but was instead created and maintained by two separate parties.  First, Defendant Universal contracted with third-party Healthcare One, LLC ("HCO") to initially create the UHC discount medical program provider network. (Exh. 1 at ¶8).  To satisfy this obligation, HCO in turn contracted with DMPO Defendant Coverdell. (Exh. 1 at ¶8).  Defendant Coverdell then arranged the bulk of the provider participation in the UHC discount medical plan by providing members access to several healthcare networks, the most notable of which is BeechStreet Physicians network,[5] purporting to provide UHC discount medical plan participants discounts at over 448,000 medical providers.  (Exh. 1 at ¶8, Exh. F).  However, HCO also

---

[5] BeechStreet Network's website reads:

> Currently, Beech Street contracts with over 560,000 respected practitioners, 5,000 hospitals, and 85,000 specialty care facilities, so it's not difficult to find a participating provider in any area of the country.

BeechStreet Patients, http://www.beechstreet.com/patients/index.html (last visited June 28, 2009).

provided a significant component of the UHC discount medical program provider network by providing access to discount pharmacy services through its own contract with Bioscrip.  (Exh. 1 at ¶8, Exh. F).  In total, the network, provided by Coverdell and HCO was intended to provide UHC discount medical program members discounts with over 561,000 providers.  (Exh. 1 at ¶8, Exh. F).

Defendant Coverdell and third-party HCO were also responsible for maintaining the respective networks they provided.  Through its contract with Defendant Universal, HCO has undertaken the obligation to ensure that all medical providers that are advertised as providing discounts to UHC members recognize and accept the card when presented, and that the information relating to these providers is, to the extent practicable, current and accurate.  (Exh. 1 at ¶9).  In turn, HCO contracted this obligation Defendant Coverdell.  (Exh. 1 at ¶9).  To this end, Defendant Coverdell is the administrator of the UHC discount medical program provider network.  (Coml. at ¶19; Exh. 1 at ¶9, Exhs. A-C; G, p. 17-20).  In this capacity, Defendant Coverdell was required to take steps to verify provider participation in the discount medical plan and provide program participants with a listing of participating providers.  (Exh. 1 at ¶9, Exh. G, p. 17).  Defendant Coverdell and HCO also provided information for Universal to rely upon in creating marketing materials regarding the number of participating providers (Exh. 1 at ¶9, Exh. F), and as administrator, Defendant Coverdell approved all marketing materials distributed by Defendant Universal regarding the UHC plans.  (Exh. 1 at ¶9, Exh. H).

**F.  Just as Many New Products Experience Initial Difficulties, the UHC Discount Medical Program Experienced Difficulties with Provider Recognition.**

As with any new product released on a nationwide scale, minor problems have arisen with respect to the administration of the UHC discount medical plan provider network.  (Exh. 1 at ¶11).  On occasion, participants would inquire whether certain providers participated in the UHC discount medical plan, and would receive a negative response from that provider, even though the particular provider was in fact a participant in the discount plan.  (Exh. 1 at ¶11).  This was attributable to the lack of sufficient communication between Defendant Coverdell and its network providers and a lack of name recognition of the UHC discount network.  (Exh. 1 at ¶11).  Often, when the same provider was shown the back of the membership card, which prominently indicates that UHC has contractual access to the BeechStreet physicians network, the miscommunication was rectified.  (Exh. 1 at ¶11).

Defendants took several steps to alleviate the difficulties experienced by its customers.  The first was to provide a helpful explanation of the miscommunication in the FAQ section of Defendant Universal's website, which read:

> **14. What Do I Do If The Health Care Provider Doesn't Know About The Universal Health Card Discount Program?**
> We have partnered with a third-party network provider called Coverdell. A provider may not recognize Universal, but as a participating network provider for Coverdell, they should recognize the network name that's located on the back of your membership card. If the provider has any questions, have them call the customer service number on the back of your card.

(Exh. 1 at ¶11, Exh. C, p. 5).  Defendants also included a "Dear Doctor" letter in the UHC discount medical program Member's Guide that customers were encouraged to provide to physicians to explain their participation in the discount program.  (Exh. 1 at ¶11, Exh. G, p. 2).  Further, Defendant Universal maintained a toll-free customer service telephone number to assist UHC members and providers with any difficulties.  (Exh. 1 at ¶11, Exh. C, p. 8, Exh. G, p. 2).

## G.  Thousands of Satisfied Customers Remain Enrolled in the UHC Discount Medical Program.

Although Plaintiffs' class claims are based upon an alleged "worthless product," thousands of customers are currently enjoying the benefits provided by the UHC discount medical plan.  (Exh. 1 at ¶10).  Defendants first began offering the UHC discount medical plan on August 26, 2008.  (Exh. 1 at ¶10).  Using data collected and maintained by Defendant Universal in the ordinary course of its business operations, 74.04% of members purchased Gold Plans, whereas 25.96% purchased Silver Plans.  (Exh. 1 at ¶10).  Even though marketing was suspended in March of 2009 and sales suspended on April 10, 2009, 4,726 Gold and Silver Plan members remain enrolled in the UHC program.  (Exh. 1 at ¶10).

## H.  To Ensure Maximum Customer Satisfaction, Defendant Universal has Issued Over 1,000 Refunds to its Customers, Including Refunds of Registration Fees.

Even though thousands of customers were ultimately satisfied with the UHC discount medical program, due to provider recognition problems experienced by Defendant Coverdell's network, many consumers still experienced difficulties, even in spite of Defendant Universal's efforts to rectify these problems.  (Exh. 1 at ¶13).  To alleviate these concerns and maintain maximum customer satisfaction,

Defendant Universal has issued over 1,218 individual refunds to customers.  (Exh. 1 at ¶12).  Each of these refunds were in the amount of $18.00 or more, and would often include the registration fee that consumers were previously advised was non-refundable.  (Exh. 1 at ¶12, Exh. I).  These refunds required Defendant Universal to sustain a loss, for the overhead and network costs were not recouped.

I.  **The Named Plaintiffs' Alleged Experiences Vary Significantly from Each Other and the Experiences of Thousands of UHC Discount Program Members.**

Named Plaintiffs Patrick Kirlin and Daniel Pilgrim have alleged experiences that differ from both each other and the thousands of satisfied customers who have enjoyed the benefits of the UHC discount medical plan.  With respect to Plaintiff Kirlin, a Pennsylvania resident, Plaintiffs allege that after reading Defendants' newspaper advertisement in the *Philadelphia Inquirer* "Plaintiff [Kirlin] believed that a significant number of healthcare providers accepted the Card and that it would provide him and his family with affordable health care, which they needed for the treatment of his wife's multiple sclerosis." (Compl. at ¶37).  "After paying the registration fee, Plaintiff [Kirlin allegedly] discovered that there were no medical providers who accepted the Card within reasonable driving distance from his home."  (*Id.* at ¶39).  Thus, Plaintiffs conclude, "Plaintiff [Kirlin allegedly] was enrolled in membership for the Card without his knowledge or consent that in fact the Card was worthless, and could not be used at any medical providers within reasonable driving distance from his home. He has derived no benefit from his 'membership' in the Card."  (*Id.* at ¶41).  Plaintiffs do not allege that Plaintiff Kirlin was "deceived" with respect to whether non-refundable registration fees were required or whether UHC membership was health insurance.

In contrast, with respect to Mississippi resident Plaintiff Pilgrim, after reading Defendants' newspaper advertisement in the *Clarion Ledger* "Plaintiff [Pilgrim] did not know that the Card was not free; that he would have to pay an $18 'registration fee' to get a 30-day 'free' trial, and that he would have to pay $49 per month to continue using the Card." (Compl. at ¶42).  Also unlike Plaintiff Kirlin, "Plaintiff [Pilgrim allegedly] was unaware that the Card cannot be used as a replacement for traditional health insurance, but can be used only to obtain purportedly a small discount at participating doctor's offices, hospitals and pharmacies. As such, Plaintiff was deceived into enrolling in a program promising discounts at participating medical providers, rather than purchasing actual health insurance coverage for

- 10 -

himself." (*Id.* at ¶43).  Plaintiffs then conclude that, after calling several local providers who allegedly did not accept the card (*Id.* at ¶45), Plaintiff Pilgrim felt his membership in the UHC discount medical plan was "worthless." (*Id.* at ¶47).  Though the ***actual*** telephone call between Defendant Universal and Plaintiff Pilgrim confirms that Plaintiff Pilgrim knew both that a non-refundable registration fee was required to participate in the UHC program and that membership was not a substitute for health insurance (Exh. 1 at ¶7, Exh. E), the differences between the alleged experiences of the named Plaintiffs demonstrate the uniqueness of each customer's experiences with the UHC program.

**J.  Defendant Universal is Taking Active Steps to Strengthen the Current UHC Network.**

Due to the provider recognition difficulties experienced within the network administered by Defendant Coverdell, and in order to strengthen the provider network offered to its customers, Defendant Universal is transitioning the UHC discount medical card to a new provider network maintained by a different DMPO.  (Exh. 1 at ¶13).  This superior discount network will provide members access to over 1,000,000 participating providers.  (Exh. 1 at ¶13).  This upgrade, including replacement membership materials, will be offered to current UHC members without any increase in monthly fees.  (Exh. 1 at ¶13, Exh. J).  Defendant Universal also intends to offer this program to all other putative class members who enrolled in the UHC plan, but subsequently cancelled, free of charge for 30-days, with Defendant Universal waiving all registration fees.  (Exh. 1 at ¶13, Exh. K).

**K.  The UHC Discount Medical Program is an Improper Target for Plaintiffs' New York Class Action Law Firm.**

On April 17, 2009, Plaintiffs filed a class action Complaint against Defendants asserting claims for violations of the OCSPA and unjust enrichment on their own behalf and on behalf of a nationwide class consisting of every single person who has ever enrolled in the UHC discount medical plan.[6] However, for the reasons that follow, the putative class alleged by Plaintiffs is patently inappropriate for class certification.  Defendants should not be forced to bear the crippling expense of class certification discovery, and Plaintiffs' class allegations should be stricken.

---

[6] In an apparent effort to conjure up more plaintiffs, Plaintiffs' counsel are currently maintaining a "Class Action Blog" titled *Universal Health Card Not What it Seems*, disparaging the UHC discount medical program and soliciting purchasers of the discount medical program.  Posting of Jerome Noll to http://classactionblog.mdpcelaw.com/2008/12/articles/deceptive-health-insurance/universal-health-card-not-what-it-seems/ (Dec. 15, 2008).

## ARGUMENT

I. **THE PUTATIVE CLASS ALLEGED BY PLAINTIFFS IS INHERENTLY UNCERTIFIABLE, THEREFORE THE CLASS ALLEGATIONS SHOULD BE STRICKEN FROM THE COMPLAINT PURSUANT TO FED. R. CIV. P. 23(D)(1)(D).**

When it is practicable to do so early in a putative class action, a court should determine that an action cannot properly be certified for class treatment.  *See*, Fed. R. Civ. P. 23(c)(1)(A).  The putative class action complaint must allege facts that, if true, would satisfy Fed. R. Civ. P. 23(a)'s prerequisites and at least one of Fed. R. Civ. P. 23(b)'s certification requirement.  *See, Cook County College Teachers Union, Local 1600, Am. Federation of Teachers, AFL-CIO v. Byrd*, 456 F.2d 882, 885 (7th Cir. 1972) ("[The plaintiff] was obliged in its complaint to allege facts bringing the action within the appropriate requirements of the Rule.")  "Sometimes the issues are plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim, and sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question."  *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 160, 102 S.Ct. 2364 (1982).  If the plaintiffs have not pled a viable theory of class recovery in accordance with Fed. R. Civ. P. 23's  requirements for class certification, an Order striking the class allegations is appropriate.[7]

A review of the Complaint demonstrates that Plaintiffs have not alleged a viable theory of class recovery, and there is neither need nor justification to wait for the parties to conduct class discovery and litigate class certification.  Plaintiffs have failed to allege any well-pled facts – rather than conclusory allegations – that would satisfy Fed. R. Civ. P. 23's requirements.  First, Plaintiffs' proposed class is fatally overbroad because the class is composed of thousands of UHC buyers who have suffered no

---

[7] *See, Thornton v. State Farm Mut. Auto Ins. Co.*, N.D.Ohio No. 1:06-cv-00018, 2006 WL 3359482, *1 (Nov. 17, 2006) (granting motion to strike class allegations under Fed. R. Civ. P. 23(c) and (d)); *Bennett v. Nucor Corp.*, E.D.Ark. No. 3:04cv291, 2005 WL 1773948, *2 (July 6, 2005) (accord); *Nguyen v. St. Paul Travelers Ins. Co.*, E.D.La. No. 06-4130, 2009 WL 23677, *1 (Jan. 5, 2009) (denying reconsideration of order striking class allegations due to predominance of individual issues over questions of law or fact common to the putative class, noting that, "Courts have routinely applied rule 23(d)(1)(D) or its predecessor rule 23(d)(4) to motions to strike class allegations"); *Byrd*, 456 F.2d at 885 (affirming the district court's order striking class allegations for failure to satisfy Fed. R. Civ. P. 23(a)); *Bd. of Educ. of Twp. High Sch. v. Climatemp, Inc.*, N.D.Ill. Nos. 79 C 3144 & 79 C 4898, 1981 WL 2033, *2 (Feb. 20, 1981) (finding that motion to strike was procedurally appropriate, reflecting "the court's inherent power to prune pleadings in order to expedite the administration of justice and to prevent abuse of its process"); *Aguilar v. Allstate Fire and Cas. Ins. Co.*, E.D.La. No. 06-cv-4660, 2007 WL 734809, *3 (Mar. 6, 2007) ("On the face of the pleading, it is clear that individualized and highly personal issues pertaining to each class member patently overwhelm any arguable common issues, rendering the claims inappropriate for class treatment"); *Lumpkin v. E.I. DuPont de Nemours & Co.*, 161 F.R.D. 480, 481-82 (M.D. Ga. 1995) (striking class allegations and stating that "awaiting further discovery will only cause needless delay and expense").

legally cognized harm – they were either not exposed to the allegedly deceptive statements when they purchased Defendants' product or they are completely satisfied with their membership in the program. Second, as the proposed class requires the application of dozens of individual state laws and requires an individualized inquiry into whether each individual plaintiff was exposed to the alleged deceptive statements and whether the alleged misrepresentation was the proximate cause of the individual plaintiff's alleged injuries, individual questions of fact and law dominate the Plaintiffs' class claims. Finally, because refunds have already been provided and Defendant Universal is voluntarily providing all putative class members with a superior product, class treatment is not an appropriate vehicle for adjudication. Fed. R. Civ. P. 23 cannot be satisfied under any reading of the Plaintiffs' Complaint.

Where, as here, the allegations in the complaint demonstrate that class treatment is improper, it is appropriate to strike the class allegations to prevent unnecessary class discovery. *Thornton*, N.D.Ohio No. 1:06-cv-00018, 2006 WL 3359482 at *4 ("Although this Rule 'does not mandate precipitate action[,]' it is only necessary to delay a decision where 'the existing record is inadequate for resolving the relevant issues.'" (*quoting*, *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1086 (6th Cir. 1996))).  If the Court were to allow Plaintiffs to conduct class discovery before striking their class allegations, the effect would be to impose massive, wasteful litigation expenses on Defendants and postpone the inevitable conclusion that the putative class does not meet the prerequisites for certification.

## A.    Plaintiffs' Proposed Class is Fatally Over-Inclusive and Unascertainable.

Courts have recognized that an implied prerequisite to class certification is that the proposed class be susceptible to precise definition so that a court can ascertain whether a particular individual is a member of the class. *See*, *Romberio v. Unumprovident Corp.*, 6th Cir. No.  07-6404, 2009 WL 87510, *7 (Jan. 12, 2009); *Miller v. University of Cincinnati*, 241 F.R.D. 285, 288 (S.D.Ohio 2006).  "The definition of a class should not be so broad so as to include individuals who are without standing to maintain the action on their own behalf."  *Clay v. Am. Tobacco Co.*, 188 F.R.D. 483, 490 (S.D. Ill. 1999).  *See also, McElhaney v. Eli Lilly & Co.*, 93 F.R.D. 875, 878 (D.S.D. 1982) ("Each class member must have standing to bring the suit in his own right"). A proposed class that includes class members

who have not suffered harm cannot be certified.  *Faralli v. Hair Today, Gone Tomorrow*, N.D.Ohio No.1:06-cv-504, 2007 WL 120664, **5-6 (Jan. 10, 2007).[8]

Here, Plaintiffs' proposed class is fatally overbroad because the class is significantly composed of individuals who have suffered no legally cognizable harm, were not subject to any alleged deception, and are very satisfied with their UHC discount program membership. (*See*, Exh. 1 at ¶10).  Plaintiffs' proposed nationwide class includes **all** persons who have ever purchased a UHC discount medical plan membership.  (*See*, Compl. at ¶51).  This putative class encompasses all UHC customers regardless of whether a particular customer saw, heard, or read (or even relied upon) a particular advertisement that is challenged by the Plaintiffs as deceptive.  Moreover, even the unascertainable number of UHC customers who did see or hear the allegedly deceptive advertisements may have noted other aspects of the UHC discount medical program (such as the relative ease in enrollment, the 24-hour nurse customer assistance hotline, or the AIG TravelGuard Assist membership) to which Plaintiffs have not raised any issue with.  Plaintiffs cannot say what aspect, if any, of any UHC advertisements may have been material to any given customer.  Thus, the proposed class herein includes an unascertainable number of customers who have no claim because they have not suffered any harm or damage in that they were not deceived.  *See, Faralli*, N.D.Ohio No.1:06-cv-504, 2007 WL 120664 at **5-6 (holding proposed class overly broad because it encompassed all customers regardless of whether a particular customer relied upon the allegedly deceptive advertisement and suffered harm); *In re McDonald's French Fries Litigation*, N.D.Ill. No. 06 C 4467, 2009 WL 1286024, *2 (May 6, 2009) (accord).[9]

---

[8] *See also, Miller*, 241 F.R.D. at 288; *McGee v. East Ohio Gas Company*, 200 F.R.D. 382, 388 (S.D Ohio 2001); *Chaz Concrete Co. v.Codell*, E.D.Ky. No. 3:03-52-KKC, 2006 WL 2453302, **4-5 (Aug. 23, 2006); *Oshana v. Coca-Cola Bottling Co.*, 225 F.R.D. 575, 580 (N.D. Ill. 2005) (denying certification of proposed class of all fountain Diet Coke purchasers in Illinois in part because the proposed class would necessarily include millions of persons who could not show damage). *Cf.*, *Simer v. Rios*, 661 F.2d 655, 670 (7th Cir. 1981) ("[I]dentifying the class insures that those actually harmed by defendants' wrongful conduct will be the recipients of the relief eventually provided").

[9] *See also, Repede v. Nunes*, 8th Dist. Nos. 87277, 87469, 2006-Ohio-4117, ¶17 (holding that class action alleging violation of the Ohio Consumer Sales Practices Act and deceptive conduct was uncertifiable because, although plaintiff and some other members of the class may have suffered damages as a result of defendant's conduct, others may not have suffered any damage at all, and extensive individualized inquiries would be necessary); *Hoang v. E*Trade Group, Inc.*, 151 Ohio App.3d 363, 784 N.E.2d 151, 2003-Ohio-301 (holding certification inappropriate because some of the putative plaintiffs had suffered damages as a result of the defendants conduct while others had not and had no claim); *Martin v. Am. Med. Sys., Inc.*, S.D. Ind. No. IP 94-2067-C-H/G, 1995 WL 680630, *5 (Oct. 25, 1995) (denying class certification because the "proposed class definition does not differentiate between AMS Series 700 recipients who have experienced difficulties or malfunctions with their implants and AMS Series 700 recipients who have had absolutely no problem with their implants").

To the extent that the Plaintiffs challenge the UHC discount plan as not providing a substantial benefit to customers (Compl. at ¶60), the proposed class is again inappropriately overbroad. This definition includes thousands of customers that currently utilize the benefits of the UHC discount medical card regularly and are satisfied with the product. It would be illogical to conclude that these satisfied customers do not receive a "substantial benefit from the Card" so as to include them within the class definition. *See, Faralli*, N.D.Ohio No.1:06-cv-504, 2007 WL 120664 at **5-6 (holding that class action which included all customers of seller's product was impermissibly overbroad because it would include "[a] customer who saw an advertisement, relied upon it, commenced treatment and was ultimately satisfied would not have suffered damage and, consequently, would not have a claim").

Where, as here, the allegations in the complaint show that the proposed class is overbroad, it is appropriate to strike the class allegations. *See, e.g.*, *In re Aiello*, 231 B.R. 693, 709 (N.D. Ill. 1999) ("The proposed class is overly broad in that it is not restricted to class members who suffered actual damages in some form or another. . . .  The failure to require injury in the class parameters is a fatal defect. Therefore, this Court must grant the motion to strike the class allegations."); *Kubany v. Sch. Bd.*, 149 F.R.D. 664, 665 (M.D. Fla. 1993) (granting motion to strike class allegations where the plaintiff filed claims on behalf of 96,100 students, but many, if not most, of those students did not share the named plaintiff's claims); *Miller v. Motorola, Inc.*, 76 F.R.D. 516, 518 (N.D. Ill. 1977).

### B. Individual Questions of Fact and Law Dominate Plaintiffs' Class Claims for Money Damages, Making a Class Action Inferior and Unmanageable.

Rule 23(b)(3) requires that common issues of fact or law predominate over individual issues. Fed. R. Civ. P. 23(b)(3).[10]  The Sixth Circuit has explained the predominance inquiry as follows:

> Fed. R. Civ. P. 23(b)(3)'s "predominance" inquiry tests whether the proposed classes are sufficiently cohesive to warrant adjudication by representation.  In analyzing the predominance requirement, courts take care to inquire into the substance and structure of the underlying claims without passing judgment on their merits.  Determining whether the plaintiffs can clear the predominance hurdle set by Fed. R. Civ. P. 23(b)(3) also

---

[10] Plaintiffs' proposed class is inappropriate for certification under Fed. R. Civ. P. 23(b)(1)(A) because the relief claimed by Plaintiffs is purely monetary damages, nor is certification under Fed. R. Civ. P. 23(b)(1)(A) appropriate due to the absence of a traditional "limited fund." *Pettrey v. Enterprise Title Agency, Inc.*, 241 F.R.D. 268, 282 (N.D.Ohio 2006). Similarly, Plaintiffs' proposed class is unsuitable for certification under Fed. R. Civ. P. 23(b)(2) because Plaintiffs do not pray for an injunction, and because an injunctive-relief class is never appropriate where, as here, the primary relief sought is pecuniary. *Id.* at 283.  Thus, Plaintiffs may only rely upon Fed. R. Civ. P. 23(b)(3).

requires us to consider how a trial on the merits would be conducted if a class were certified.  Though not a determination on the merits, the Fed. R. Civ. P. 23(b)(3) analysis helps prevent the class from degenerating into a series of individual trials.

*Rodney v. Northwest Airlines, Inc.,* 146 Fed. Appx. 783, 786 (6th Cir. 2005) [citations omitted].  This analysis must be undertaken for each asserted claim.  *Chesner v. Stewart Title Guar. Co.*, N.D.Ohio No. 1:06-cv-00476, 2008 WL 553773, *12 (Jan. 23, 2008).

Plaintiffs cannot satisfy either of Fed. R. Civ. P. 23(b)(3)'s requirements.[11]  First, because the proposed nationwide class seeks to include members from at least 24 different states – founded upon individual violations of separate consumer protection statutes and unjust enrichment laws – the Court (and jury) would be required to undertake a near-impossible 48-part analysis.  Second, the liability and damages elements of each Plaintiffs' claims will turn not on facts common to all members of the UHC program, but on facts unique to each purchaser.  The putative class members viewed different advertisements in different mediums with differing statements, had different telephone conversations with different UHC customer representatives during their enrollment in the UHC program that would have affected the impact of the statements in the advertisements (potentially curing any alleged misrepresentation), made their purchase decisions for different reasons after receiving different representations, selected different UHC discount membership options, experienced different alleged problems with the discount membership program offered by UHC (if any), and received different remedies (if any).  (*See*, Factual Background, *supra*).  Accordingly, class treatment is inappropriate.

## 1.  Individual Questions of Law Dominate Plaintiffs' Putative Class Action.

As a threshold matter, when considering whether questions of law predominate in a nationwide class action, the court must engage in a choice-of-law analysis to determine which state's or states' laws to apply.  Common issues of law cannot predominate if adjudication of the class claims would require the application of numerous states' varying substantive consumer fraud and unjust enrichment laws.  *See, In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 17-18 (7th Cir.2002).  Such is the case here.

---

[11] Although this motion does not seek to strike Plaintiffs' class allegations based on their failure to plead facts that satisfy the other Fed. R. Civ. P. 23 requirements, Defendant Universal will, if this case should proceed to a class certification motion, show that Plaintiffs cannot meet other requirements either.  By way of example, both Plaintiffs Kirlin and Pilgrim fully understood that a non-refundable registration fee was required to participate in the UHC program and that UHC membership was not health insurance (Exh. 1 at ¶7, Exhs. D-E), therefore, Plaintiffs Kirlin and Pilgrim can never "adequately" represent a class premised upon such allegations within the meaning of Fed. R. Civ. P. 23(a).

> **i.    The Allegations in Plaintiffs' Complaint are Governed By the Law of Each State Where the UHC Membership Plans Were Sold.**

Federal courts sitting in diversity must apply the choice-of-law rules of the forum state. *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020 (1941); *Tele-Save Merch. Co. v. Consumers Distrib. Co.,* 814 F.2d 1120, 1122 (6th Cir.1987).  In *Morgan v. Biro Mfg. Co.*, 15 Ohio St.3d 339, 342, 474 N.E.2d 286 (1984) the Ohio Supreme Court set forth the following factors to be considered in determining which state law controls:

(1)  The place of the injury;

(2)  The place where the conduct causing the injury occurred;

(3)  The domicile, residence, nationality, place of incorporation, and place of business of the parties;

(4)  The place where the relationship between the parties, if any, is located; and

(5)  Any factors under Section 6 of 1 Restatement of the Law 2d, Conflict of Laws 10, which the court may deem relevant to the litigation.[12]

By evoking the "similar laws of other states" in their First Cause of Action (Compl. at ¶¶5, 62), Plaintiffs impliedly admit that each class member's respective home state's law applies to their respective individual claims.[13]  Plaintiffs' admission is buttressed by the analysis of the factors above. The only contacts this case has with Ohio are that (1) Defendant Universal's principal place of business and incorporation is located in Ohio (*See*, Compl. at ¶12), (2) Defendant Universal's alleged course of conduct causing purported injury emanated from Ohio (*See*, *id.* at ¶¶19, 57), and (3) some putative class members may reside in Ohio.  On the other hand, contacts outside of Ohio include: (1) states where the

---

[12] Section 6 of 1 Restatement of the Law 2d, Conflict of Laws 10, provides as follows:

  (1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.

  (2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include

  (a)  the needs of the interstate and international systems; (b) the relevant policies of the forum; (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue; (d) the protection of justified expectations; (e) the basic policies underlying the particular field of law; (f) certainty, predictability and uniformity of result; and (g) ease in the determination and application of law to be applied.

[13] If Plaintiffs deny that the respective home state laws apply to each putative class member's cause of action, and assert that only Ohio law applies to this litigation, then for the reasons set forth in Defendant Coverdell's Memorandum in Support of Motion to Dismiss (Docket No. 23), pp. 6-12, Plaintiffs' Complaint must nonetheless be dismissed.  This is because the OCSPA cannot apply to transactions occurring outside of Ohio, and as non-Ohio residents, the named Plaintiffs lack standing to prosecute any claims under the OCSPA. *Id.*

majority of putative class members reside; (2) states where the alleged misrepresentations were published, disseminated, and read by the putative class members (*See, id.* at ¶¶1-2, 23); (3) states where the putative class members allegedly acted in reliance upon the alleged misstatements; (4) states where memberships in the discount medical program were utilized; (5) states where the purported injury to the putative class members occurred; (6) states where the Defendant Coverdell is incorporated and maintains its principal place of business; and (7) states where Defendant Universal's alleged course of conduct causing purported injury emanated. (*See, id.* at ¶13). Thus, in balance, the laws of the state of residence of each putative class member must apply to their respective claims.

This conclusion is in accordance with numerous other courts that have considered multistate class actions based upon alleged violations of consumer protection statutes and unjust enrichment. *See, Bridgeston/Firestone,* 288 F.3d at 1017-18 ("State consumer-protection laws vary considerably, and courts must respect these differences rather than apply one state's laws to sales in other states with different rules").[14]  *In re Ford Motor Co. Ignition Switch Prods. Liab. Litig.*, 174 F.R.D. 332 (D.N.J. 1997) illustrates the point. There, the court rejected the plaintiffs' argument that Michigan law should apply to all classwide claims that ignition switches were defective because Ford was headquartered there, the vehicles were manufactured there, pertinent corporate decisions were made there, and misrepresentations in advertising materials originated there. "Each plaintiff's home state has an interest in protecting its consumers from in-state injuries caused by foreign corporations and in delineating the scope of recovery for its citizens under its own laws." *Id.* at 348. And "[s]ince the laws of each of the fifty states vary on important issues that are relevant to plaintiffs' causes of action and defendants' defenses," due process would not allow the court to apply the law of a single jurisdiction. *Id.*

---

[14] *See also, Linn v. Roto-Rooter, Inc.,* 8th Dist. No. 82657, 2004-Ohio-2559, ¶ (dissent, conducting Ohio choice of law analysis in respect to class action based upon CSPA and unjust enrichment and concluding that individual law of putative plaintiffs applies); *Karnuth v. Rodale, Inc.,* E.D.Pa. No. Civ.A. 03-742, 2005 WL 1683605, *4 (July 18, 2005) (regardless of headquarters of defendant, "each class member would be subject to the consumer fraud statutes of the member's home state because that state would have the paramount interest in applying its laws to protect its consumers"); *Lyon v. Caterpillar, Inc.,* 194 F.R.D. 206, 212 (E.D.Pa. 2000); *Lewis v. Bayer AG,* 2004 WL 1146692, at * 12 (Pa.Com.Pl. Nov.18, 2004) ("State consumer protection acts are designed to protect the residents of the state in which a deceptive act occurs or the individual resides and therefore the state where the individual resides has an overriding interest in applying the law of that state"); *Debra F. Fink, D.M.D., MS, PC v. Ricoh Corp.,* 365 N.J.Super. 520, 599, 839 A.2d 942, 991 (2003); *In re Jackson Nat'l Life Ins. Co. Premium Litig.,* 183 F.R.D. 217, 223 (W.D.Mich.1998); *In re Ford Motor Co. Bronco II Prod. Liab. Litig.,* 177 F.R.D. 360, 370-73 (E.D.La.1997).

### ii. Variations Between The Consumer Statutes of Each Jurisdiction Preclude A Finding That Common Questions of Law Predominate.

Although Plaintiffs bear the burden of conducting an extensive conflicts analysis and showing that state law variations do not present insurmountable obstacles to certification, *Spence v. Glock, Ges.m.b.H.*, 227 F.3d 308, 313 (5th Cir. 2000),[15] it is already clear that Plaintiffs cannot do so.  A large number of courts have recognized that the various states' consumer fraud statutes differ radically. *See*, *BMW of North Am., Inc. v. Gore*, 517 U.S. 559, 568-69 (1996) ("No one doubts that a State may protect its citizens by prohibiting deceptive trade practices... But the States need not, and in fact do not, provide such protection in a uniform manner").  Differences among the states' statutes are "neither illusory nor inconsequential." *See*, David R. Rice, *Product Quality Laws and the Economics of Federalism* 65 B.U.L. REV. 1, 2 (Jan.1985).  The following illustrates, in summary form, the wide panoply of differences between the states' respective consumer fraud laws:

- **No Cause of Action.**  As a threshold matter, some states have no private cause of action under their consumer protection laws or limit the right to a private action. *See, e.g.,* Iowa Code Ann. §714.16(7) (no private right of action); N.D.CC. § 51-15-09; *Trade 'N Post, L.L.C. v. World Duty Free Americas, Inc.,* 628 N.W.2d 707, 721 (N.D. 2001) (private right of action only available for injunctive relief); *Coors v. Sec. Life of Denver Ins. Co.*, 112 P.3d 59, 64 (Colo. 2005) (requiring showing of public impact for private action).

- **No Class Actions.**  Some state statutes do not permit a class action. La. Rev. Stat. Ann. § 51:1409(A); Miss. Code Ann. § 75-24-15(4); Mont. Code Ann. § 30-14-133; S.C. Code Ann. § 39-5-140(a); Ala. Code § 8-19-10(f); Ga. Code Ann. § 10-1-399. *See also Demitropoulous v. Bank One Milwaukee, N.A.*, 915 F. Supp. 1399, 1416 n.17 (N.D. Ill. 1996) (predicting that class actions would not be allowed under Wisconsin Act). Other states, such as Ohio, impose significant restrictions on class actions. See, R.C. §1345.09(B) (class actions are limited to actual damages and only if defendant had prior notice that conduct was deceptive); N.M. Stat. § Ann. 57-12-10-E (only named plaintiffs may recover treble damages not class members).[16]

- **Varying Demand and Notice Requirements.**  Some states require a demand upon the defendants before action is commenced.  Ala. Code § 8-19-10(e) (demand on defendant 15 days prior to action); Cal. Civ. Code § 1782 (notice to defendant required 30 days prior to action); Ga. Code Ann. § 10-1-399(b) (notice to defendant 30 days prior to action); Mass. Gen. Laws. ch. 93A, § 9(3); Tex. Bus. Com. Code § 17.505.  Other states require notice to the respective state's Attorney General.  Conn. Gen. Stat. § 42-110g(c); Kan. Stat. Ann. § 50-634(g); La. Rev. Stat.

---

[15] *See also*, *Walsh v. Ford Motor Co.*, 807 F.2d 1000, 1017 (D.C. Cir. 1986) (*quoting, In re School Asbestos Litigation*, 789 F.2d 996 (3rd Cir. 1986); *Gorsey v. I.M. Simon, & Co*, 121 F.R.D. 135 (D.Mass.1988).

[16] As explained in Defendant Coverdell's Memorandum in Support of Motion to Dismiss (Docket No. 23), pp. 15-17, Plaintiffs have not sufficiently pled the requirements necessary to maintain an OCSPA class action pursuant to R.C. §1345.09(B), requiring dismissal of any class action based upon the OCSPA for this reason alone.

51:1409B; Miss. Code Ann. § 75-24-15 (plaintiff must first try to settle claim through attorney general-approved dispute settlement process); Mo. Rev. Stat. § 407.025.7.

- **Differing Levels of Scienter.** Of those states permitting private causes of action, there are different levels of scienter required, ranging from willfulness to a complete absence of intent. For example, Oregon requires willful conduct. Or. Rev. Stat. § 646.638(1). Other states require a showing of intent to deceive/volitional act. *See, e.g., Colonial Lincoln-Mercury Sales, Inc. v. Molina*, 262 S.E.2d 820, 823-24 (Ga. App. 1979). Idaho, Kansas, Oklahoma, Colorado, Arkansas and Nevada all require knowledge. Idaho Code § 48-603; Kan. Stat. Ann. § 50-626(b)(1); Okla. Stat. Ann. Tit. 15, §§ 753(5); *Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.,* 62 P.3d 142, 147 (Colo. 2003); Ark. Code Ann. 4-11-107(a)(1); and (7); Nev. Rev. Stat. Ann. § 598.0915. Other states do not require intent. *See, e.g., Bond Leather Co. v. Q.T. Shoe Mfg. Co.*, 764 F.2d 928, 937 (1st Cir. 1985) (Massachusetts law).

- **Differing Measures of "Deceptiveness."** Some states measure the "deceptiveness" of challenged conduct by its potential effect on the least sophisticated consumer. *See, e.g., Aurigemma v. Arco Petroleum Prods. Co.*, 734 F. Supp. 1025, 1029 (D.Conn. 1990) (Connecticut law). Others focus on potential effect to the "reasonable person." *See, e.g., Haskell v. Time, Inc.*, 857 F. Supp. 1392, 1398-99 (E.D. Cal. 1994); *Blue Cross, Inc. v. Corcoran*, 558 N.Y.S.2d 404, 405 (App. Div. 1990). In Ohio, an act is deceptive if it has the likelihood of inducing a state of mind not in accord with the facts. *Ohio ex rel. Celebrezze v. Ferraro*, 63 Ohio App.3d 168, 578 N.E.2d 492 (1989).

- **Differing Reliance Requirements.** In some states a plaintiff must establish "reliance" on an alleged deception. *See, Lynas v. Williams*, 454 S.E.2d 570, 574 (Ga.App.1995); *Cooper v. GGGR Investments, LLC*, 334 B.R. 179, 188 (E.D.Va. 2005); *Sokolski v. Trans Union Corp.*, 53 F. Supp. 2d 307, 315 (E.D.N.Y. 1999); *Mass. Laborers' Health & Welfare Fund v. Philip Morris, Inc.*, 62 F. Supp. 2d 236, 242 (D. Mass. 1999); *Occidental Land Inc. v. Superior Court (Fahnestock)*, 556 P.2d 750 (Cal. 1976); *Forbes v. Par Ten Group, Inc.*, 394 S.E.2d 643 (N.C. App. 1990); *Picus v. Wal-Mart Stores, Inc.*, D.Nev. Nos. 2:07-CV-00682-PMP-LRL, 2:07-CV-00686-PMP-LRL, 2:07-CV-00689-PMP-LRL, 2009 WL 667419, **8-9 (Mar. 16, 2009) ("California, Illinois, Oregon, and Nevada require individual proof as to reliance or causation"); *Feeney v. Disston Manor Personal Care Home, Inc.,* 849 A.2d 590, 597 (Pa.Super.2004) (indicating that justifiable reliance is an element of deceptive practices). The Michigan act requires a plaintiff to establish that a reasonable person would have relied on the defendant's representations; individual reliance is not required. *Dix v. Am. Bank Life Assurance Co.*, 415 N.W.2d 206, 209 (Mich. 1987). Delaware, Idaho and Tennessee do not impose reliance requirements. Del § 2513; Idaho. Code § 48-601; Tenn. Code §47-18-103. In Ohio, detrimental reliance is a factor taken into consideration in determining whether an act or practice is unconscionable. R.C. §1345.03(B)(7).

- **Differing Standing Requirements.** Some states permit businesses to sue, while others limit standing to consumers or even individuals. *Cf.*, Tex. Bus. & Com. Code Ann. § 17.45(4); Fla. Stat. 501.203(7); *Delhomme Industries, Inc. v. Houston Beechcraft, Inc.*, 669 F.2d 1049, 1060 (5th Cir. 1982) (the purchaser was a corporation, not an individual, and thus, not a consumer under the statute); Haw. Rev. Stat. § 480-2(d) (legislative history indicates actions are limited to natural persons). Under the Missouri statute, private actions are limited to "any persons who purchase or lease goods or services primarily for personal, family or household purposes." Mo. Rev. Stat. § 407.025(1).

- **Differing Availability of Treble and Punitive Damages.**  In various circumstances, some states statutorily authorize an award of treble damages.  *Cf.*, Ala. Code § 8-19-10(a) (award of treble damages "in the court's discretion"); Wash. Code Ann. § 19.86.090 (accord); 6 Del. Code § 2525 (allowing treble damages if the "victim was 65 years of age or older or a disabled person"); N.H. Stat. § 358-A:10 (treble damages for "a willful or knowing violation"). Some states even allow punitive damages.  *See, e.g.*, *Stephenson v. Capano Development, Inc.*, 462 A.2d 1069, 1076 (Del. 1983).  Ohio allows treble damages only for violations committed "knowingly," but not in class actions.  R.C. §1345.09(B).  Ohio does not permit an award of punitive damages.  *Brenner Marine, Inc. v. George Goudreau, Jr. Trust*, 6th Dist. No. No. L-93-077, 1995 WL 12118, *5 (Jan. 13, 1995).

- **Differing Availability of Jury Trials.**  Some states, such as Ohio, permit jury trials.  *Robinson v. McDougal,* 62 Ohio App. 3d 253, 575 N.E.2d 469 (1988).  Others, such as Illinois and Massachusetts, do not.  *See, Richard/Allen/Winter, Ltd. v. Waldorf*, 509 N.E.2d 1078 (Ill. App. 1987); *Guity v. Commerce Ins. Co.*, 36 Mass.App.Ct. 339, 631 N.E.2d 75.[17]

Based on these and other substantial variations, described in more detail in **Exhibit 4**, countless courts have refused to certify multistate class actions based upon the various consumer fraud statutes of each state.  *See, e.g., In re HP Inkjet Printer Litigation*, N.D.Cal. No. C 05-3580 JF, 2008 WL 2949265, *7 (July 25, 2008) ("HP has submitted a detailed analysis of the variations in state consumer protection and deceptive trade practice laws. This analysis demonstrates the many differences among states with respect to, for example, statutes of limitations, scienter requirements, and calculation of damages. … Based on the record before it, the Court concludes that the proposed nationwide class would be unmanageable"); *In re McDonald's French Fries Litigation*, N.D.Ill. No. 06 C 4467, 2009 WL 1286024, *2 (May 6, 2009) (accord).[18]

---

[17] See also, John S. Kiernan, Michael Potenza, Peter Johnson (1998), *Developments in Consumer Fraud Class Action Law*, 537 PLI/PAT 237, 279 (finding conduct that is actionable under various consumer fraud acts varies considerably), attached hereto as **Exhibit 3**.

[18] *See also, Bridgestone/Firestone, Inc.*, 288 F.3d 1012  (denying nationwide class certification because variances in consumer protection and fraud laws rendered class unmanageable); *In re Prempro*, 230 F.R.D. 555, 564 (E.D.Ark. 2005) (refusing to certify 24-state class action because consumer fraud laws "differ with regard to the defendant's state of mind, the type of prohibited conduct, proof of injury-in-fact, available remedies, and reliance, just to name a few differences"); *Tylka v. Gerber Products Co.*, 178 F.R.D. 493 (refusing to certify nationwide class involving consumer fraud claims because of nuances and differing standards of proof, procedure, substance, and remedies) (N.D.Ill.1998); *Karnuth v. Rodale, Inc.*, E.D.Pa. No. Civ.A. 03-742, 2005 WL 1683605, *4 (denying certification based upon "insuperable obstacle" presented by variations in state consumer fraud statutes); *Stipelcovich v. Direct TV, Inc.,* 129 F.Supp. 2d 989, 995 (E.D. Tex. 2001) (court, *sua sponte*, denied certification given burden of applying multiple states' consumer protection laws to claims pled); *In re Stucco Litig.*, 175 F.R.D. 210, 217 (E.D.N.C. 1997); *So. States Police Benevolent Ass'n, Inc. v. First Choice Armor & Equip., Inc.*, 241 F.R.D. 85, 93 (D. Mass. 2007) ("[I]f Subclass A is certified, the Court will need to apply the laws of the eight different states. . . . After review of the subject consumer protection laws, this Court concludes that variances in the substantive prerequisites of such claims render a certification of Subclass A unmanageable and contrary to the fair and efficient adjudication of this matter"); *Fisher v. Bristol-Myers Squibb Co.*, 181 F.R.D. 365, 369, 374 (N.D. Ill. 1998); *Carpenter v. BMW of North America, Inc.*, E.D.Pa. No. CIV. A. 99-CV-214,1999 WL 415390, *8 (E.D. Pa. 1999); *Block v. Abbott Laboratories*, N.D.Ill. No. 99 C 7457, 2002 WL 485364, *5 (Mar. 29, 2002) (finding nationwide class certification

###### iii.    Variations In The Common Law Of Unjust Enrichment Of Each Jurisdiction Renders Certification Impossible.

Variations in state law similarly preclude certification of Plaintiffs' claim for unjust enrichment.

The Southern District of Illinois explained:

> The actual definition of "unjust enrichment" varies from state to state.  Some states do not specify the misconduct necessary to proceed, while others require that the misconduct include dishonesty or fraud.  *See, Johnson v. American Nat'l Ins. Co.,* 126 Ariz. 219, 613 P.2d 1275 (Ariz.App.1980).  Other states only allow a claim of unjust enrichment when no adequate legal remedy exists. *Cantor Fitzgerald, L.P. v. Cantor,* 724 A.2d 571 (Del.Ch.1998).  Many states, but not all, permit an equitable defense of unclean hands. Those states that permit a defense of unclean hands vary significantly in the requirements necessary to establish the defense. *See, Polverari v. Peatt,* 29 Conn.App. 191, 614 A.2d 484, 490 (1992) (requiring that the defendant demonstrate that the plaintiff engaged in "willful misconduct"); *Dennett v. Kuenzli,* 130 Idaho 21, 936 P.2d 219, 225 (1997) (A court may deny a plaintiff equitable relief if the plaintiff's "conduct has been inequitable, unfair and dishonest, or fraudulent and deceitful as to the controversy at issue").

*Clay v. American Tobacco Co.*, 188 F.R.D. 483, 501 (S.D.Ill. 1999).   Additionally, "some states consider unjust enrichment a remedy at law, while other states consider it an equitable claim." *In re Baycol Products Litigation*, 218 F.R.D. 197, 214 (D.Minn. 2003) (*citing*, *Partipilo v. Hallman,* 156 Ill.App.3d 806, 109 Ill.Dec. 387, 510 N.E.2d 8, 11 (1987), *Southtown Plumbing, Inc. v. Har-Ned Lumber Co.,* 493 N.W.2d 137, 140 (Minn.Ct.App.1992)).   Based upon these variations, multistate class actions based upon unjust enrichment are improper.[19]

---

improper, and recognizing "[a]cross the country, states have enacted consumer protection statutes which vary on a wide range of important issues, including subtleties in standards of proof, procedure, and remedies"); *In re General Motors Corp. Anti-Lock Brake Prods. Liab. Litig.*, 966 F. Supp.1525, 1537 (E.D. Mo. 1997); *Lyon v. Caterpillar, Inc.*, 194 F.R.D. 206 (E.D.Pa.2000) (rejecting nationwide certification, finding consumer fraud laws of the various states are not uniform and management problems are likely to arise from the need to determine and apply the various consumer fraud acts); *Lilly v. Shaughnessy*, N.D.Ill. No. 00 C 7372, 2002 WL 507126, *2  (April 3, 2002) (finding nationwide class certification was improper because the laws of unjust enrichment vary from state to state and require individualized proof of causation and certification of consumer fraud claims is unmanageable).

[19] *See, e.g., Prempro*, 230 F.R.D. at 564 (refusing to certify 24-state class action based upon unjust enrichment because of significant variance in state laws); *Lilly*, N.D.Ill. No. 00 C 7372, 2002 WL 507126 at *2 (finding nationwide class certification was improper because the laws of unjust enrichment vary from state to state and require individualized proof of causation and certification of consumer fraud claims is unmanageable); *Thompson v. Bayer Corp.*, E.D.Ark.No. 4:07CV00017 JMM, 2009 WL 362982, *7-8 (Feb. 12, 2009) ("After considering the variations in unjust enrichment laws, the Court finds that Plaintiff has failed to satisfy the superiority and predominance requirements of Rule 23(b)(3)"); *In re Conagra Peanut Butter Products* Liability, 251 F.R.D. 689 (N.D.Ga.2008) ("This morass is useful to establish not only the lack of uniformity of unjust enrichment claims across the country, but also the inferiority of class-wide resolution due to discerning the many differing legal standards."); *Bridgestone/Firestone*, 288 F.3d at 1018-19 (reversing certification of nationwide class because the laws of 50 states and the District of Columbia would apply to class claims for fraudulent

### iv.  Individual Issues of Law Dominate Plaintiffs' Class Claims.

"The great weight of authority observes that when class claims cannot be brought under a unifying law, predominating questions of law are absent, and certification is inappropriate."[20]  Because Plaintiffs' putative class claims would require the application of at least 24 different jurisdictions' consumer fraud and unjust enrichment laws, individual questions of law predominate.  Fed. R. Civ. P. 23(b)(3) cannot be satisfied, and Plaintiffs' class allegations should be stricken.

### 2.  Individual Questions of Fact Dominate All of Plaintiffs' Putative Class Claims.

Although Plaintiffs purport to identify three generic common questions of fact or law (Compl. at ¶53(b)), it is apparent that the substance of these questions are not in fact "common" or "predominating" to the proposed classes in the relevant sense — i.e., the substance of these questions cannot be formulated in the same, uniform manner for each Plaintiff and class member.  More importantly, the answers to the questions do not rest on uniform facts and evidence, and will not be answered the same way for every UHC discount card member.  Given Plaintiffs' varying allegations concerning the purported deficiencies with UHC's product, there are numerous individual questions of liability and damages, and therefore Plaintiffs' claims cannot, as a matter of law, be certified for class treatment.

At a minimum, every claim pled in the Complaint requires Plaintiffs to plead and prove that they enrolled in the UHC program and subsequently incurred damages that were proximately caused by Defendants' actions.  More specifically, Plaintiffs' claims for violations of the consumer fraud statutes, and by extension unjust enrichment based on Defendants' allegedly wrongful conduct,[21] the proximate cause inquiry focuses on whether the individual Plaintiff received or was exposed to the alleged misrepresentation, whether the misrepresentation was the proximate cause of that Plaintiff's alleged

---

concealment, breach of warranty, consumer fraud, and unjust enrichment and because they vary substantially from one another); *Sears Tools Mktg.*, 2006 WL 3754823, at *2 n.3 (differences exist among states' unjust enrichment laws).

[20] *Drooger v. Carlisle Tire & Wheel Co.*, W.D. Mich. No. 1:05-CV-73, 2006 WL 1008719, *9 (Apr. 18, 2006).  *See also*, *Am. Med. Sys.*, 75 F.3d at 1085 ("If more than a few of the laws of the fifty states differ, the district judge would face an impossible task of instructing a jury on the relevant law, yet another reason why class certification would not be the appropriate course of action").

[21] *See In re Sears, Roebuck & Co. Tools Mktg. & Sales Practices Litig.*, No. 05 C 4742, 05 C 2623, 2007 WL 4287511, at *9 (N.D. Ill. Dec. 4, 2007) ("Plaintiffs' unjust enrichment claim is based on wrongful conduct—fraud. Generally speaking, then, plaintiffs will have to demonstrate that they were deceived by Sears's advertising and marketing; that as a result, they conferred a benefit on Sears; and that it would be unjust for Sears to retain that benefit").

injuries, and whether the Plaintiff actually suffered cognizable harm.  These are highly individualized factual inquiries, and preclude, as a matter of law, certification under Fed. R. Civ. P. 23(b).

> **i.      The Elements Required To Prove Violations Of The Consumer Protection Statutes Will Necessitate Individualized Inquiries.**

The Plaintiffs' Complaint amply demonstrates the highly individualized factual inquires that will be necessary to adjudicate the Plaintiffs' claims.  Plaintiffs' Complaint contains the following allegations, each of which necessitate highly individualized factual inquiries:

- **Alleged Lack of Local Provider Participation:**  Plaintiffs allege that, "Defendants [] promise consumers that certain doctors participate in the program, only to have Plaintiffs later find out that their medical providers do not accept the Card."  (Compl. at ¶30).  This allegation requires proof that the respective putative class members' *own* anticipated providers do not participate in the UHC discount medical program, contrary to Defendants' representations.  In application, this could require as many as 561,000 "mini trials" on this issue alone.

- **Alleged Confusion Relating to Insurance.**  Notwithstanding multiple disclaimers to the contrary,[22] Plaintiffs claim that "[s]ome consumers have even dropped their regular health insurance policies for the Card thinking it was cheaper, not realizing that the Card is not a substitute for health insurance[.]"  (Compl. at ¶30).  This allegation will require inquiry and proof as to which individual Plaintiffs became confused as to the nature of the UHC Discount Plan, the cause of this purported misunderstanding, and whether this misunderstanding was reasonable.

- **Alleged Confusion Relating to Charges.**  Even though all advertisements plainly indicate a registration fee is required to participate in the UHC discount program,  Plaintiffs allege that "many consumers may not even realize that they are paying for the 'free' Card as Defendants do not even send bills to consumers requesting payment or authorization for payment."  (Compl. at ¶31 [emphasis omitted]).  This will necessarily require individualized proof as to the alleged cause of this confusion (if any), when these instances occurred (if at all), and if any subsequent communications remedied this claimed confusion.

- **Alleged Refusal to Refund Charges:**  Plaintiffs allege that, "when consumers contact Defendants to request that they remove and refund the fees charged to their credit or debit cards, they are given the runaround, and are unable to obtain refunds of the charges."  (Compl. at ¶3).  Even though Defendants' advertising indicates that registration fees are non-refundable, proof of this allegation will require discovering which individual Plaintiffs were unable to obtain a refund, whether any communications by Defendants actually caused a belief that registration fees were refundable, and whether this belief was reasonable.

- **Alleged Lack of Notice:**  Plaintiffs claim that, "no adequate notice has been provided to Plaintiffs, and no consent or bargained-for approval has been granted by Plaintiffs or other consumers who purchased the Card."  (Compl. at ¶50).  Whether Plaintiffs had notice of the terms and provided approval for participation in the UHC discount program is necessarily an individual-by-individual inquiry.

---

[22] *See*, Compl. at Exh. 1, which plainly indicates "THIS IS NOT INSURANCE."

▪ **Alleged Absence of "Substantial Benefit":**  Defendants' acts purportedly violate the consumer fraud statutes of all 51 relevant jurisdictions because "Defendants know that consumers will not receive a substantial benefit from the Card[.]"  (Compl. at ¶60).  Whether an individual Plaintiff received a "substantial benefit", and whether Defendants knew of any lack of a "substantial benefit" with respect to any individual Plaintiff will require individual determinations.

Each of these allegations demonstrate the varying nature of each putative Plaintiffs' understanding of Defendants' advertisements and interactions with Defendants.  These individualized facts preclude class certification as a matter of law.

This was the exact case in *Hazlehurst v. Brita Prod. Co.*, 295 A.D.2d 240 (N.Y. App. Div. 2002).  There, plaintiff filed a class action again Brita, alleging the company's advertising uniformly misrepresented the number of gallons its water filter could purify.  *Id.* at 241.  Plaintiff moved to certify a class of all filter purchasers.  *Id.*  The court denied the motion noting that reliance on Brita's ads was an element of nearly every claim.  *Id.* at 241-42. This element, the court found, would depend on separate proof from each class member because purchasers of Brita's filter had varying reasons for buying the product and different understandings of the ads.  *See, id.* at 242. Because reliance would have to be tried separately, predominance could not be satisfied.  *Id.*

Looking further, the individuality of each putative Plaintiff's claims is also exemplified by the allegations of the named Plaintiffs themselves.  On one hand, Plaintiff Kirlin allegedly believed a significant number of providers participated in the program, but claims that he later learned that none within a reasonable driving distance of his home were participants.  (Compl. at ¶¶37, 39).  Plaintiff Kirlin does not allege that Defendants misled him with respect to registration fees or whether UHC membership is health insurance.  Plaintiff Pilgrim, on the other hand, claims that he did not realize an $18.00 registration fee was required to purchase a UHC membership.  (*Id.* at ¶42).  Plaintiff Pilgrim also contends that he was "unaware that the Card cannot be used as a replacement for traditional health insurance" and claims to have actually forewent the opportunity to purchase health insurance.  (*Id.* at ¶43).  Thus, based upon certain alleged representations made by Defendants, named Plaintiff Kirlin believed that that the UHC discount program would merely provide discounts at certain providers, whereas named Plaintiff Pilgrim believed that the UHC discount program was a substitute for health insurance.  Though Plaintiff Pilgrim's allegations are demonstrably false by his own admissions (*See*,

Exh. 1 at ¶7, Exh. E), when the Court "inquire[s] into the form that trial on these issues would take," *Simer*, 661 F.2d at 672-73, it is apparent that there would have to be a class member-by-class member inquiry on the questions of representations, reasonable reliance, and proximate cause.  Certification is patently inappropriate.  *See, Prempro*, 230 F.R.D. at 564 (holding that individual issues predominate in 24-state class action based upon consumer fraud statutes because each claim "requires individualized proof concerning reliance and causation. . . . Whether a plaintiff saw an advertisement; whether the particular advertisement was fraudulent; whether that plaintiff relied on the advertisements; and whether the plaintiff was damaged as a result of the advertisement are all individual questions of fact").[23]

Finally, going beyond the Plaintiffs' bald assertions,[24] a cursory examination of the underlying facts further demonstrate the predominance of individualized facts that are inherent in this case.

- **Material Difference Between Plans Offered.**  Approximately *1/3* of the entire putative class enrolled in the Silver UHC plan as opposed to the Gold plan.  As explained above, these plans have material, functional differences that drive to the heart of the Plaintiffs' claims.  This distinction bears directly upon the effect any alleged misrepresentations made by Defendants would have on the respective recipient, for the reasonable expectation of Silver plan participants is necessarily diminished.  This distinction will also bear directly upon the "benefit" that would have been expected from the putative class member, for the relative expected benefit is necessarily significantly smaller.  This weighs strongly against certification.  *See, In re Masonite Corp. Hardboard Siding Products Liability Litigation*, 170 F.R.D. 417, 424 (E.D.La. 1997).

- **Material Differences in Advertisements Used.**  As explained above, UHC utilized different marketing mediums to promote the UHC discount program.  The messages conveyed by these mediums varied.  Different marketing materials were seen by different putative class members, and a determination as to which messages were seen by which individuals will require a member-by-member inquiry.  As such, class certification is not appropriate.  *Gonzalez v. Proctor and Gamble Co.*, 247 F.R.D. 616, 623 (S.D.Cal. 2007) (refusing certification when "[c]lass members may have relied on different representations, while some may not have relied

---

[23] *See also, McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215, 223 (2nd Cir. 2008) ("Individualized proof is needed to overcome the possibility that a member of the purported class purchased Lights for some reason other than the belief that Lights were a healthier alternative–for example, if a Lights smoker was unaware of that representation, preferred the taste of Lights, or chose Lights as an expression of personal style"); *Clark v. Experian Info. Solutions, Inc.*, 256 Fed. Appx. 818, 861 (7th Cir. 2007) (in a case alleging deception under the Illinois Fraud Act, it is not possible for a plaintiff to establish proximate causation unless the plaintiff can show that he or she was, in some manner, deceived by the misrepresentation and satisfaction of this element requires individualized proof); *Williams v. Ford Motor Co.*, 192 F.R.D. 550, 585 (N.D.Ill. 2000) (refusing to certify an Illinois Fraud Act claim due to individual causation issues); *Oshana*, 225 F.R.D. at 582 ("To prove these claims, Oshana must establish a causal connection between the alleged misconduct and damages, namely that deceptive marketing induced each class member to purchase fountain diet Coke. This is impossible to prove on a classwide basis").

[24] "Before certifying a class, the district court must conduct a rigorous analysis of the Fed. R. Civ. P. 23 prerequisites. … [T]he Court may go beyond the pleadings to the extent necessary to understand the claims, defenses, relevant facts, and applicable substantive law in order to make a meaningful determination of the certification issues." *Jones v. Allercare, Inc.*, 203 F.R.D. 290, 295 (N.D.Ohio 2001).

on, or even have been exposed to, any of the allegedly false representations"); *Solomon v. Bell Atlantic Corp.*, 9 A.D.3d 49, 52-53 (N.Y. App. Div. 2004) ("[C]lass certification is not appropriate where the 'plaintiffs do not point to any specific advertisement or public pronouncement by the [defendants] . . . which was undoubtedly seen by all class members.'" [citations omitted]).[25]

▪ **Conversations with Customer Representatives Vary Significantly.** Not only did the marketing materials utilized by UHC vary significantly, but the subsequent conversations that each customer had with UHC representatives were also varied and unique. (*Cf.*, Exh. 1 at ¶8, Exh. D with Exh. E). Thus, individual inquiries will be necessary to ascertain the specifics of each customer's conversations with UHC representatives and whether these conversations cured any purported misrepresentations or inability to obtain discounts with local providers. These inquiries render certification inappropriate. *Martin v. Dahlberg, Inc.*, 156 F.R.D. 207, 216-17 (N.D. Cal. 1994) (denying class certification because of disparities in what advertising was seen, and whether salespeople were involved); *Clark v. Experian Info., Inc.*, 233 F.R.D. 508, 512 (N.D. Ill. 2005) ("The nature of the plaintiffs' claims require an individualize[d] person-by-person evaluation of what the potential class members viewed on the defendants' website, the potential class member's understanding of and reliance on this information, and what damages, if any, resulted").

▪ **Numerous Customers have Received Refunds.** In an effort to ensure that its customers remain satisfied, UHC has provided complete refunds to customers for various reasons. Such reasons include difficulty in securing discounts from local providers. Thus, separate proof is necessary in this case, because under no circumstances may a class be certified where certain members have suffered no harm. *See, Rosenstein v. CPC Intern., Inc.*, E.D.Pa. No. 90-4970, 1991 WL 1783, *5 (Jan. 8, 1991). For instance, in *Clark v. Experian Info Solutions, Inc.*, 233 F.R.D. 508 (N.D. Ill. 2005), plaintiffs sued a credit agency alleging they were deceived into enrolling in a credit protection plan based on the defendant's uniform misrepresentations. *Id.* at 510. Plaintiffs moved for class certification, but were denied. *Id.* The court found there was evidence suggesting some members of the proposed class had not suffered damages because, among other things, they had already received a refund from the defendant. *Id.* at 512. In light of this evidence, separate trials for each class member would be needed to determine the existence of damages. *Id.* Such is the case here.

▪ **Thousands of Customers are Very Satisfied.** Finally, even though the UHC discount program has only been offered since August 26, 2008, over 4,700 customers remain enrolled, enjoying the discounts provided by the UHC program time after time. It will be necessary to determine, on an individual-by-individual basis, which customers have enjoyed the benefits provided by the UHC discount program, and which customers' experiences match those claimed in the Plaintiffs' Complaint. This will essentially require thousands of "mini trials" to make this determination, and renders certification inappropriate. *See, Faralli*, N.D.Ohio No.1:06-cv-504, 2007 WL 120664 at **5-6 (holding that class action which included all customers of purchasers product was impermissibly overbroad because it would include "[a] customer who saw an

---

[25] *See also, Picus v. Wal-Mart Stores, Inc.*, D.Nev. Nos. 2:07-CV-00682-PMP-LRL, 2:07-CV-00686-PMP-LRL, 2:07-CV-00689-PMP-LRL, 2009 WL 667419, **8-9 (Mar. 16, 2009) (under consumer fraud statutes, the need to demonstrate individual reliance upon particular advertisements renders certification inappropriate); *Gross v. Johnson & Johnson-Merck Consumer Products. Co.*, 696 A.2d 793, (N.J. Super. Ct. 1997) (accord); *Strain v. Nutri/System, Inc.*, E.D.Pa. No. 90-2772, 1990 WL 209325, at *9 (Dec. 12, 1990); (accord); *Rosenstein v. CPC Intern., Inc.*, E.D.Pa. No. 90-4970, 1991 WL 1783, *5 (Jan. 8, 1991) (accord).

advertisement, relied upon it, commenced treatment and was ultimately satisfied would not have suffered damage and, consequently, would not have a claim").

These issues of fact will predominate Plaintiffs' claims based upon the consumer fraud statues.

Plaintiffs' claim for certification is improper as a matter of law.

> ### ii.    Plaintiffs' Unjust Enrichment Claims Will Require Individual Factual Inquiries.

With respect to Plaintiffs' unjust enrichment claim, individual issues of fact will also predominate, making certification inappropriate.  Though state law variations in unjust enrichment are great (*See,* Part B.1.iii, *supra*), each claim of unjust enrichment would necessarily focus on the individual question of whether Defendants' retention of the enrollment fee paid by a particular class member was unjust and warrants restitution of the purchase price.  For example, if an individual class member fully understood the fees charged by Defendants and never experienced any provider unavailability problems, that class member would not be able to show that Defendants' retention of the registration fee would be unjust – the putative class member had received the full benefit of his or her bargain.  *In re Rezulin Products Liability Litigation*, 210 F.R.D. 61, 69 (S.D.N.Y. 2002) ("[T]he question whether an individual class member got his or her money's worth is inherently individual . . .[and] involves very much the same questions as would a claim for money damages for personal injury"); *Linn v. Roto-Rooter, Inc.,* 8th Dist. No. 82657, 2004-Ohio-2559, ¶¶16-18 (accord).

Moreover, because Plaintiffs' claims for unjust enrichment are based on Defendants' alleged fraudulent conduct, each putative class member would need to prove reliance on Defendants' purported misrepresentation in deciding to enroll in the UHC discount program and thereby conferring a benefit on Defendants.  This is true even if Plaintiffs are only attempting to obtain the $18.00 registration fee:

> In order to obtain restitution of the purchase price . . . [under an unjust enrichment theory] plaintiffs would be obliged, at least in many jurisdictions, to prove some kind of harm . . . Although theories presumably could differ, they would have to establish that they were injured by detrimental reliance on a fraudulent or misleading statement.

*In re Rezulin*, 210 F.R.D. at 68-69 [emphasis added].

The district court's decision in *Oshana* is instructive here. There, the court denied certification of the plaintiffs' unjust enrichment claims because individual issues of reliance and damages would predominate: "In her complaint, Oshana alleges class members were 'tricked' by Coca-Cola's

- 28 -

marketing scheme into purchasing fountain diet Coke that they would not have otherwise purchased. Individualized issues of detriment and whether each member was tricked would predominate over any common issues of law or fact." *Oshana*, 225 F.R.D. at 586 [citation omitted]. Likewise, scores of other courts have concluded that similar unjust enrichment claims are inappropriate for class certification because of the need for individualized proof.[26]

Whether Defendants have been unjustly enriched at the expense of a particular consumer hinges on individual factual inquiry. These inquiries overshadow the questions Plaintiffs allege are common to the putative class members. Class adjudication is inappropriate for the unjust enrichment claims.

**C.     The Predominance of Individual Questions of Fact and Law, In Addition to Defendant Universal's Voluntary Efforts to Maximize Customer Satisfaction, Renders Plaintiffs' Proposed Class Action Unmanageable and Inferior.**

The second prong of Rule 23(b)(3) requires that a class action be a superior and manageable vehicle for adjudication. *Am. Med. Sys.*, 75 F.3d at 1084. Here, a class action is inferior for several reasons. First, as explained above, proof of the liability and damages elements of Plaintiffs' claims will require individual fact determinations for each putative class member. These individual questions of fact would overwhelm any benefit that might be derived from class action treatment of this case. Second, Plaintiffs' lawsuit will require application of the consumer fraud statutes of at least 24

---

[26] *See, e.g.*, *Chesner v. Stewart Title Guar. Co.*, N.D.Ohio No. 1:06-cv-00476, 2008 WL 553773, *12, (Jan. 23, 2008) (denying certification on unjust enrichment claim because "cause of action necessarily involves examination of the individual factual circumstances of every transaction"); *Linn*, 8th Dist. No. 82657, 2004-Ohio-2559 at ¶¶16-18; *In re Sears, Roebuck & Co. Tools Mktg. & Sales Practices Litig.*, N.D.Ill. No. 05 C 4742, 05 C 2623, 2007 WL 4287511, *9 (Dec. 4, 2007) ("Plaintiffs' unjust enrichment claim is based on wrongful conduct—fraud. Generally speaking, then, plaintiffs will have to demonstrate that they were deceived by Sears's advertising and marketing; that as a result, they conferred a benefit on Sears; and that it would be unjust for Sears to retain that benefit."); *In re Baycol Prods. Litig.*, 218 F.R.D. 197, 213-14 (D. Minn.2003) (finding that individual issues predominate as to whether class members were injured by the product or the product did not provide any health benefits); *Krieger v. Gast*, 197 F.R.D. 310, 320 (W.D.Mich. 2000) (refusing to certify unjust enrichment claim because "the fraud-related claims predominate[d]" and those claims would "likely provide the sole basis of liability on the unjust enrichment claim"); *In re Jackson Nat'l Life Ins. Co. Premium Litig.*, 183 F.R.D. 217, 222 (W.D. Mich.1998) ("[I]t appears from plaintiffs' own survey of state laws on unjust enrichment and constructive trust relief that a showing of fraud or other inequitable conduct is universally prerequisite to the imposition of a constructive trust. Inasmuch as Jackson National's alleged fraud is the inequitable conduct at issue in this case, and a showing of reliance is essential to establishment of fraud, it is fair to say that a showing of reliance is prerequisite to relief in the form of a constructive trust as well."); *Osuna v. Wal-Mart Stores, Inc.*, No. C20014319, 2004 WL 3255430, at *6 (Ariz. Super. Ct. Dec. 23, 2004) (denying certification of unjust enrichment claim because of necessity for individual inquiry to establish liability and damages); *Green v. McNeil Nutritionals, LLC*, No. 2004-0379-CA, 2005 WL 3388158, at *5 (Fla. Cir. Ct. Nov. 16, 2005) ("Logically, the circumstances necessary to establish the [unjust] element . . . must demonstrate that the plaintiff was harmed in some way before courts will impose this equitable remedy. Therefore, . . . sustaining a cause of action for unjust enrichment requires individualized proof from each member of the class").

jurisdictions, in addition to the unjust enrichment laws of at least 24 jurisdictions. The application of many states' substantive laws in one class action, however, is not a superior method of adjudication and renders Plaintiffs' proposed class action unmanageable and inferior.[27] A federal court cannot amalgamate state laws into "a kind of Esperanto instruction" to the jury.[28] Moreover, because the law applied to this action will be the law of at least 24 jurisdictions, as opposed to Ohio law exclusively, there is no particular desirability of proceeding in this forum as opposed to the Plaintiffs' home states.[29]

Finally, and perhaps most importantly, because Defendant Universal has actively engaged consumers who are dissatisfied with the UHC product, voluntarily provided many with refunds, and is actively working to provide a superior replacement product free of charge, class litigation is not an appropriate vehicle to resolve this dispute. *See, Jones*, 203 F.R.D. at 305 (finding class action inferior method of adjudication because, among other reasons, "defendant has already resolved the claims of many of those people plaintiffs seek to include in the proposed class"). If individuals remain unsatisfied after Defendants' efforts, because many of the consumer fraud statutes relied upon by Plaintiff provide for the recovery of attorneys' fees and multiple damages, incentives exist for consumers to bring solo actions to seek redress for their grievances. Based upon these considerations, Plaintiffs cannot establish as a matter of law that class action treatment is a superior and manageable vehicle for adjudication.

## II. PLAINTIFFS' REMAINING INDIVIDUAL CLAIMS FAIL TO SATISFY THE $75,000.00 AMOUNT IN CONTROVERSY REQUIREMENT OF 28 U.S.C. 1332(a), THEREFORE DISMISSAL OF THE ENTIRE ACTION IS APPROPRIATE.

The Class Action Fairness Act provides federal jurisdiction in class action claims with over five million dollars in controversy and minimal diversity. 28 U.S.C. § 1332(d)(2). An Order striking the class allegations from Plaintiffs' Complaint will also dispose of the named Plaintiffs' individual claims, as they are unable to satisfy the amount in controversy requirements of 28 U.S.C. §1332(a). *St. Clair v. Kroger Co.*, 581 F.Supp.2d 896, 902 (N.D.Ohio 2008). This action should be dismissed in its entirety.

---

[27] *See*, *Lyon*, 194 F.R.D. at 206 (finding class action not superior where "[m]anagement problems are likely to result from the need to determine and apply the various states' consumer fraud acts"); *Sears Tools Mktg.*, 2007 WL 4287511, at *10 (finding the differences in 51 jurisdictions' unjust enrichment and seven states' consumer fraud laws was "another factor that renders the proposed class action unmanageable").

[28] *In re Rhone-Poulenc Rorer Inc.*, 51 F.3d 1293, 1300 (7th Cir. 1995).

[29] *See*, *Jones v. Allercare, Inc.*, 203 F.R.D. 290, 307 (N.D.Ohio 2001).

## **CONCLUSION**

Based upon the forgoing, and pursuant to Fed. R. Civ. P. 23(c)(1) and 23(d)(1)(D), the Court should strike Plaintiffs' class allegations and prevent wasteful class discovery and class certification proceedings.

DATED:        June 29, 2009                    Respectfully submitted,

TZANGAS, PLAKAS, MANNOS &
RAIES, LTD.


/s/ Gary A. Corroto
Lee E. Plakas (0008628)
Gary A. Corroto (0055270)
Edmond J. Mack (0082906)
John D. Ramsey (0083705)
220 Market Avenue South
Eighth Floor
Canton, Ohio 44702
Telephone:        (330) 455-6112
Fax:                (330) 455-2108
Email:              lplakas@lawlion.com

*Attorneys for Defendant Universal
Health Card, LLC*

## <u>CERTIFICATE OF SERVICE</u>

     I hereby certify that a true and accurate copy of the foregoing has been filed and served electronically on the 29th day of June 2009 upon all parties currently registered for this matter in the Court's electronic filing system.

/s/ Gary A. Corroto              
Gary A. Corroto (0055270)
