UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Daniel Pilgrim, et al., | ) | CASE NO.:  5:09CV879 |
| | ) | |
| Plaintiffs, | ) | JUDGE JOHN ADAMS |
| | ) | |
| v. | ) | **ORDER AND DECISION** |
| | ) | |
| Universal Health Card, LLC, et al., | ) | (Resolving Doc. 23) |
| | ) | |
| Defendants. | ) | |
| | ) | |

This matter comes before the Court on a motion to dismiss filed by Defendant Coverdell & Company, Inc. (Doc. 23).  Having reviewed the pleadings, briefs, and applicable the law, the Court hereby GRANTS the motion to dismiss.

**I.  Facts**

Plaintiffs Daniel Pilgrim and Patrick Kirlin filed this action on behalf of themselves and all others similarly situated on April 16, 2009.  In their complaint, Plaintiffs allege that they were "tricked" into signing up for a program that promised them discounts on health care services.  Specifically, Plaintiffs contend that Defendant Universal Health Card ("UHC") used deceptive advertising to induce them into signing up a program that offered them no tangible benefits.  In addition, Plaintiffs allege that Coverdell administered the program on behalf of UHC and engaged in similarly deceptive practices.  The complaint contains two causes of action.  The first cause of action alleges violation of Ohio's Consumer Sales Practices Act ("CSPA"), while the second cause of action alleges unjust enrichment.

On June 17, 2009, Coverdell moved to dismiss both counts in the complaint.  On July 1, 2009, this Court held a case management conference.  During the conference, the Court permitted Plaintiffs to engage in discovery for 60 days and then to respond to the motion to dismiss within 30 days after the close of that initial discovery period. As a result, Plaintiffs opposed the motion to dismiss on October 19, 2009.  Coverdell replied in support of its motion on November 5, 2009.  The matter now appears before the Court.

**II. Legal Standard**

The Sixth Circuit stated the standard for reviewing a motion to dismiss in *Assn. of Cleveland Fire Fighters v. Cleveland*, 502 F.3d 545 (6th Cir. 2007) as follows:

> The Supreme Court has recently clarified the law with respect to what a plaintiff must plead in order to survive a Rule 12(b)(6) motion.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). The Court stated that "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 1964-65 (citations and quotation marks omitted). Additionally, the Court emphasized that even though a complaint need not contain "detailed" factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Id.* (internal citation and quotation marks omitted).  In so holding, the Court disavowed the oft-quoted Rule 12(b)(6) standard of *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) (recognizing "the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief"), characterizing that rule as one "best forgotten as an incomplete, negative gloss on an accepted pleading standard." *Twombly*, 550 U.S. at 563.

*Id.* at 548.

If an allegation is capable of more than one inference, this Court must construe it in the plaintiff's favor.  *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995) (citing *Allard v. Weitzman*, 991 F.2d 1236, 1240 (6th Cir. 1993)).  This Court may not grant a Rule 12(b)(6) motion merely because it may not believe the plaintiff's

factual allegations.  *Id*.  Although this is a liberal standard of review, the plaintiff still must do more than merely assert bare legal conclusions.  *Id.*  Specifically, the complaint must contain "either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory."  *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988) (quotations and emphasis omitted).

**III. Analysis**

1. CSPA claim

Coverdell's motion focuses on multiple theories that they purport warrant dismissal of the CSPA claim.  The Court, however, finds it unnecessary to address each argument as dismissal is appropriate due to the fact that the CSPA does not reach Coverdell's conduct.

The following facts, as alleged by Plaintiffs, are relevant to the CSPA claim.  UHC offers a discount medical plan that revolves around presenting a card to health care providers and receiving a discount from them for being a member of this plan.  Customers sign up for this plan by speaking with a UHC representative or through UHC's website.  Fees are then paid to UHC to cover the cost of the membership.  In turn, Coverdell, a discount medical plan organization, administers the program by allowing members access to its network of doctors and health care providers.

Ohio Revised Code ("O.R.C.") § 1345.02(A) provides that "No supplier shall commit an unfair or deceptive act or practice in connection with a consumer transaction."  In turn, O.R.C. § 1345.01(C) defines "supplier" as a "a seller, lessor, assignor, franchisor, or other person engaged in the business of effecting or soliciting consumer transactions, whether or not the person deals directly with the consumer."  In its motion, Coverdell has

3

argued that it does not fall within the definition of a supplier under the CSPA. The Court agrees.

In their opposition, Plaintiffs focus upon the fact that the "service" sold to the consumers in this matter is access to a network controlled by Coverdell. Coverdell has never disputed this fact, admitting that once a consumer signed up with UHC, the consumer had access to Coverdell's network. In making their argument, Plaintiffs rely heavily on *Knoth v. Prime Time Marketing Mgmt., Inc.*, 2006 WL 3114273 (Ohio Ct. App. Oct. 27, 2006). This Court finds *Knoth* to be distinguishable.

The facts of *Knoth* were summarized as follows by the Ohio appellate court:

> TotalHome sells memberships to individuals who may order furniture through TotalHome. The Knoths, who were members, ordered a set of Natuzzi furniture, manufactured in Italy, through TotalHome, and paid TotalHome $4,918.65, the entire purchase price, on April 19, 2000. TotalHome claims that the Knoths cancelled this order on July 25, 2000, which is more than eight weeks after they placed their order and paid the purchase price. In any event, if there was a request to cancel the order, it was later rescinded. On December 26, 2000, the Knoths requested a refund of their money, which TotalHome refused. This lawsuit followed.

*Id.* at *1. In finding that TotalHome was a supplier under the Ohio Revised Code, the Court held that the statutory definition of supplier "leaves no doubt of the General Assembly's intent to include within the scope of the Consumer Sales Practices Act an entity, like TotalHome, that takes orders for goods from consumers, and also accepts payment of the money comprising the purchase price." *Id.* at *2.

Unlike TotalHome, Coverdell never took orders from consumers, nor did it accept payment of any membership fees. These activities were all performed by UHC. As such, *Knoth*, on its face, provides a proper analogy for finding that UHC is a supplier under the

4

CSPA. *Knoth*, however, offers no support for the proposition that Coverdell should be found to be a supplier.

Instead, the Court finds the rational in *Charvat v. Farmers Ins. Columbus, Inc.*, 178 Ohio App.3d 118 (2008) to be more applicable.  In *Charvat*, the plaintiff asserted violations of the CSPA that resulted from telemarketing calls made by a company named Take the Lead.  It was undisputed that Take the Lead placed the call with the purpose of selling Farmers Insurance.  After this initial call, Take the Lead forwarded Charvat's information to Perlman Agency, which then called Charvat three more times.  In rejecting an argument that Farmers Insurance was a supplier, the court noted as follows:

> Although Farmers may be considered a supplier for purposes of some consumer transactions, Farmers did not effect or solicit the consumer transaction in the present case. As explained above, the sales call was solicited by Take the Lead and was effected and prompted by Perlman Agency. No doubt Farmers could have obtained a financial benefit from any sales resulting from the first call, but that benefit is too far removed here from the actual solicitation by Take the Lead. Similarly, if Farmers, instead of Perlman Agency, had hired and then directed Take the Lead to make the first call, Farmers' actions would have been more directly responsible for "effecting" the consumer transaction. Having only a possible indirect benefit resulting from Perlman Agency's acts, Farmers cannot be liable for the first call under the CSPA.

*Id.* at 132-33.

Similar to Farmers, Coverdell's actions were one step removed from any consumer transaction.  It was UHC that actively solicited new members and accepted their payments.  Any benefit to Coverdell would have been indirect, similar to the benefit described in *Charvat.*

The Court is mindful of Plaintiffs' argument that Coverdell approved of the advertising that is at the heart of this litigation.  However, Coverdell was required to approve UHC's marketing materials.  O.R.C. 3961.03(C) provides that a "discount

5

medical plan organization shall approve in writing all advertisements, marketing materials, brochures, and discount cards prior to a marketer using these materials to market, promote, sell, or distribute the discount medical plan."  Similarly, O.R.C. 3961.03(B) makes a discount medical provider organization bound by and responsible for the activities of its marketer that fall within the scope of their agency.

On its face, these activities and statutory requirements would appear to support a claim that Coverdell is subject to the CSPA due to its relationship with UHC.  However, Ohio's CSPA does not apply to an "act or practice required or specifically permitted by or under federal law, or by or under other sections of the Revised Code[.]"  O.R.C. § 1345.12(A).  As Ohio's statutes create the agency between UHC and Coverdell and also require Coverdell to approve of UHC's marketing activities, the Court finds that these activities cannot form the basis of liability under the CSPA.

Based upon the above, the Court finds the Coverdell is not a supplier under the definition provided in Ohio's CSPA.  Accordingly, count one against Coverdell is properly dismissed.

2. Unjust Enrichment

In its motion, Coverdell contends that Plaintiffs' unjust enrichment claim must fail as a matter of law.  This Court agrees.

Under Ohio law, unjust enrichment occurs when a person "has and retains money or benefits which in justice and equity belong to another." *Hummel v. Hummel*, 133 Ohio St. 520, 528 (1938).  The elements of unjust enrichment are as follows: "(1) a benefit conferred by a plaintiff upon a defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit by the defendant under circumstances where it would be

6

unjust to do so without payment ('unjust enrichment')." *Hambleton v. R.G. Barry Corp.*, 12 Ohio St.3d 179, 183 (1984).

In its motion, Coverdell relies upon *Johnson v. Microsoft Corp.*, 106 Ohio St.3d 278. Specifically, Coverdell relies upon the following commentary in *Johnson*:

> The rule of law is that an indirect purchaser cannot assert a common-law claim for restitution and unjust enrichment against a defendant without establishing that a benefit had been conferred upon that defendant by the purchaser. The facts in this case demonstrate that no economic transaction occurred between Johnson and Microsoft, and, therefore, Johnson cannot establish that Microsoft retained any benefit "to which it is not justly entitled."

*Id.* at 286. Plaintiffs contend that the above is inapplicable because they have demonstrated a direct benefit. Plaintiffs assert that Coverdell was paid by UHC on a per-customer basis. Plaintiffs, therefore, conclude that they conferred a benefit on Coverdell.

In *Johnson*, the purchaser of a personal computer sued Microsoft seeking to recover damages from Microsoft's alleged monopoly pricing of its operating system. Under those facts, there is little doubt that Microsoft received an indirect benefit from the sale of a personal computer with its operating system installed. For that matter, it is highly likely that Microsoft received payment on some per-computer basis for the use of its operating system. Despite those facts, the Ohio Supreme Court found that unjust enrichment was improper because the plaintiff never engaged in an economic transaction with Microsoft.

A similar fact pattern is present herein. While Coverdell may have received payments from UHC, there was no economic transaction between Coverdell and Plaintiffs. Any payments received by Coverdell were received by virtue of a contract between Coverdell and UHC. As such, at a minimum, Plaintiffs cannot establish the final

7

prong of their unjust enrichment claim. "Enrichment alone will not suffice to invoke the remedial powers of a court of equity. Because the plaintiff is seeking the equitable remedies available under a claim of unjust enrichment, it must show a superior equity so that it would be unconscionable for the defendant to retain the benefit." *Chesnut v. Progressive Cas. Ins. Co.*, 166 Ohio App.2d 299, 209 (2006) (quotations and alterations omitted).  In this matter, absent an economic transaction between Plaintiffs and Coverdell, Plaintiffs cannot establish superior equity in payments received by Coverdell *from UHC*.  Accordingly, Plaintiffs' unjust enrichment claim must fail.

### IV. Conclusion

Coverdell's motion to dismiss is GRANTED.  The complaint as it relates to Coverdell is DISMISSED.

IT IS SO ORDERED

February 3, 2010                                    */s/ Judge John R. Adams*
Date                                                        JUDGE JOHN R. ADAMS
                                                                UNITED STATES DISTRICT COURT